**EXHIBIT B**

# INTERCREDITOR AGREEMENT

This INTERCREDITOR AGREEMENT (this "Agreement"), dated as of March 12, 2014, is made by and between GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation, as agent under and pursuant to the First Lien Credit Agreement (as hereinafter defined) (in such capacity, together with its successors and assigns, the "Original First Lien Agent"), and CERBERUS BUSINESS FINANCE, LLC, a Delaware limited liability company, as agent under and pursuant to the Second Lien Credit Agreement (as hereinafter defined) (in such capacities, together with its successors and assigns in such capacities, the "Original Second Lien Agent"), and is acknowledged by LAST CALL GUARANTOR, LLC, a Delaware corporation ("Holdings"), and the other Obligors (as hereinafter defined):

WHEREAS, Holdings, each of Holdings' Subsidiaries signatory thereto as a "Borrower" (such Subsidiaries, together with Holdings, each a "First Lien Borrower" and collectively, the "First Lien Borrowers"), the Original First Lien Agent, and the lenders party thereto (together with their successors and assigns, the "Original First Lien Lenders") have entered into a Credit Agreement dated as of the date hereof (such agreement as in effect on the date hereof, the "Original First Lien Credit Agreement") pursuant to which, among other things, the Original First Lien Lenders and the Original First Lien Agent have agreed, upon the terms and conditions stated therein, to make, or permit to be assumed, loans and advances to and to issue letters of credit (or guarantees or other undertakings in respect thereof) for the account of the First Lien Borrowers up to the principal amount of $80,226,120.45 at any time outstanding. The repayment of the Obligations (as that term is defined in the Original First Lien Credit Agreement) is secured by security interests in and liens on substantially all of the assets of the First Lien Borrowers pursuant to certain collateral documents in favor of the Original First Lien Agent, for the benefit of the First Lien Lenders (as hereinafter defined), which documents, together with the other collateral and loan documents executed and delivered in connection with the Original First Lien Credit Agreement, each as in effect on the date hereof, are referred to herein as the "Original First Lien Loan Documents";

WHEREAS, Holdings, each of Holdings' Subsidiaries signatory thereto as a "Borrower" (such Subsidiaries, together with Holdings, each a "Second Lien Borrower" and collectively, the "Second Lien Borrowers"), the Original Second Lien Agent, and the lenders party thereto (together with their successors and assigns, the "Original Second Lien Lenders") have entered into a Credit Agreement dated as of the date hereof (such agreement as in effect on the date hereof, the "Original Second Lien Credit Agreement") pursuant to which, among other things, the Original Second Lien Lenders and the Original Second Lien Agent have agreed, upon the terms and conditions stated therein, to make, or permit to be assumed,  a term loan to the Second Lien Borrowers in an original principal amount of $27,000,000.  The repayment of the Obligations (as that term is defined in the Original Second Lien Credit Agreement) is secured by security interests in and liens on substantially all of the assets of the Second Lien Borrowers pursuant to certain collateral documents in favor of the Original Second Lien Agent, for the benefit of the Second Lien Lenders (as hereinafter defined), which documents, together with the other collateral and loan documents executed and delivered in connection with the Original Second Lien Credit Agreement, each as in effect on the date hereof, are referred to herein as the "Original Second Lien Loan Documents";

WHEREAS, the Original First Lien Agent, for and on behalf of itself and the First Lien Lenders, and the Original Second Lien Agent, for and on behalf of itself and the Second Lien Lenders, wish to establish their respective rights and priorities in the Collateral and their claims against the Obligors;

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Original First Lien Agent, on behalf of itself and the First Lien Lenders, and the Original Second Lien Agent, on behalf of itself and the Second Lien Lenders, hereby agree as follows:

1.    Definitions; Rules of Construction.

a.    Terms Defined Above and in the Recitals.  As used in this Agreement, the following terms shall have the respective meanings indicated in the opening paragraph hereof and in the above Recitals:

"Agreement"
"First Lien Borrower" and "First Lien Borrowers"
"Holdings"
"Original First Lien Agent"
"Original First Lien Lenders"
"Original First Lien Credit Agreement"
"Original First Lien Loan Documents"
"Original Second Lien Agent"
"Original Second Lien Credit Agreement"
"Original Second Lien Lenders"
"Original Second Lien Loan Documents"
"Second Lien Borrower" and "Second Lien Borrowers"


b.    Other Definitions.  As used in this Agreement, the following terms shall have the following meanings:

"Adequate Protection Lien" has the meaning set forth in Section 5.d.

"Agent" means First Lien Agent or Second Lien Agent, as the context may require.

"Bank Product Obligations" has the meaning set forth in the original First Lien Credit Agreement.

"Bankruptcy Code" shall mean title 11 of the United States Code, as in effect from time to time.

"Capital Stock" means (a) in the case of a corporation, corporate stock, (b) in the case of an association or business entity, any and all shares, interests, participations, rights or other equivalents (however designated) of corporate stock, (c) in the case of a partnership or limited liability company, partnership or membership interests (whether general or limited) and

(d) any other interest or participation that confers on a Person the right to receive a share of the profits and losses of, or distributions of property of, the issuing Person.

"Cash Collateral" means any Collateral consisting of money or cash equivalents, any security entitlement (as defined in the UCC) and any financial assets (as defined in the UCC).

"Collateral" means all assets and properties upon which either First Lien Agent or Second Lien Agent now has or hereafter acquires a Lien, whether now owned or hereafter acquired by any Obligor or any other Person, together with all rents, issues, profits, products, and Proceeds thereof.

"Control Collateral" means any Collateral consisting of a certificated security (as defined in the UCC), investment property (as defined in the UCC), a deposit account (as defined in the UCC) and any other Collateral as to which a Lien may be perfected through physical possession or control by the secured party or any agent therefor.

"DIP Financing" has the meaning set forth in Section 5.d.

"Discharge of First Lien Indebtedness" means payment in full in cash (or in the case of (i) letters of credit, the cash collateralization as required by the Original First Lien Loan Documents following a First Lien Default, (ii) Secured Swap Obligations, termination or cancellation of any and all related agreements (or the backing of all the relevant obligations by stand-by letters of credit or cash collateral in a manner as is reasonably satisfactory to the applicable Secured Swap Provider and in an amount equal to 105% of such obligations) or (iii) Bank Product Obligations, the backing of all relevant obligations by standby letters of credit or cash collateral in a manner as is reasonably satisfactory to each applicable obligee of Bank Product Obligations and in an amount equal to 105% of such obligations) of the First Lien Indebtedness (other than First Lien Indebtedness consisting solely of contingent indemnification obligations under the First Lien Loan Documents for which no claim has been asserted in writing) after or concurrently with termination of all commitments to extend credit under any First Lien Credit Agreement.

"Discharge of Priority First Lien Indebtedness" means payment in full in cash (or in the case of (i) letters of credit, the cash collateralization as required by the Original First Lien Loan Documents following a First Lien Default, (ii) Secured Swap Obligations, termination or cancellation of any and all related agreements (or the backing of all the relevant obligations by stand-by letters of credit or cash collateral in a manner as is reasonably satisfactory to the applicable Secured Swap Provider and in an amount equal to 105% of such obligations) or (iii) Bank Product Obligations, the backing of all relevant obligations by standby letters of credit or cash collateral in a manner as is reasonably satisfactory to each applicable obligee of Bank Product Obligations and in an amount equal to 105% of such obligations) of the First Lien Indebtedness (other than (a) Excluded First Lien Indebtedness and (b) First Lien Indebtedness consisting solely of contingent indemnification obligations under the First Lien Loan Documents for which no claim has been asserted in writing) after or concurrently with termination of all commitments to extend credit under any First Lien Credit Agreement.

"<u>Discharge of Priority Second Lien Indebtedness</u>" means payment in full in cash of the Second Lien Indebtedness (other than (a) Excluded Second Lien Indebtedness and (b) Second Lien Indebtedness consisting solely of contingent indemnification obligations under the Second Lien Loan Documents for which no claim has been asserted in writing) after or concurrently with termination of all commitments to extend credit under any Second Lien Credit Agreement.

"<u>Discharge of Second Lien Indebtedness</u>" means payment in full in cash of the Second Lien Indebtedness (other than Second Lien Indebtedness consisting solely of contingent indemnification obligations under the Second Lien Loan Documents for which no claim has been asserted in writing) after or concurrently with termination of all commitments to extend credit under any Second Lien Credit Agreement.

"<u>Equity Interests</u>" means Capital Stock and all warrants, options, or other rights to acquire Capital Stock (but excluding any debt security that is convertible into, or exchangeable for, Capital Stock).

"<u>Event of Default</u>" means a First Lien Default or "Event of Default" as defined in the Second Lien Credit Agreement.

"<u>Excluded First Lien Indebtedness</u>" means, collectively, (a) the aggregate outstanding principal amount of loans, letter of credit accommodations, Bank Product Obligations and Secured Swap Obligations made, issued or incurred pursuant to the First Lien Credit Agreement intentionally and with actual knowledge, at the time such loans, letter of credit accommodations, Bank Product Obligations or Secured Swap Obligations were made, issued or incurred, that such loans, letter of credit accommodations, Bank Product Obligations or Secured Swap Obligations would cause the total aggregate principal amount thereof to exceed the Maximum Priority First Lien Loan Amount, or any category thereof, at such time, (b) any interest, fees, attorneys fees, costs, expenses and indemnities payable on account of the principal described in <u>clause (a)</u> above under the First Lien Loan Documents or in respect thereof, (c) any prepayment premium, make-whole obligation, or early termination fee payable pursuant to the terms of the First Lien Credit Agreement, and (d) any default interest (but not any other interest) or loan fees, each arising from or related to a default and accruing or becoming due under the terms of the First Lien Loan Documents on or after the commencement of any Insolvency Proceeding relating to any Obligor or any other Person to the extent that a claim for such default interest or loan fees is not allowable or allowed in such Insolvency Proceeding.

"<u>Excluded Second Lien Indebtedness</u>" means, collectively, (a) the aggregate outstanding principal amount of loans made, issued or incurred pursuant to the Second Lien Credit Agreement intentionally and with actual knowledge, at the time such loans were made, issued or incurred, that such loans would cause the total aggregate principal amount thereof, to exceed $29,700,000 minus the sum of all permanent repayments after the date hereof of the principal amount of the Term Loans as (as defined in the Second Lien Credit Agreement) actually received by the Second Lien Lenders (other than in connection with a refunding, replacement or refinancing thereof pursuant to an agreement which constitutes a Second Lien Credit Agreement.), (b) any interest (including interest that is paid-in-kind and capitalized on the principal of such Term Loans), fees, attorneys fees, costs, expenses and indemnities payable on account of the principal described in <u>clause (a)</u> above under the Second Lien Loan Documents or

in respect thereof, (c) any prepayment premium, make-whole obligation, or early termination fee payable pursuant to the terms of the Second Lien Credit Agreement, and (d) any default interest (but not any other interest) or loan fees, each arising from or related to a default and accruing or becoming due under the terms of the Second Lien Loan Documents on or after the commencement of any Insolvency Proceeding relating to any Obligor or any other Person to the extent that a claim for such default interest or loan fees is not allowable or allowed in such Insolvency Proceeding.

"<u>Exercise Any Secured Creditor Remedies</u>" or "<u>Exercise of Secured Creditor Remedies</u>" means (a) the taking of any action to enforce or realize upon any Lien, including the institution of any foreclosure proceedings or the noticing of any public or private sale or other disposition pursuant to Article 9 of the UCC, (b) the exercise of any right or remedy provided to a secured creditor or otherwise on account of a Lien under the First Lien Loan Documents, the Second Lien Loan Documents, applicable law, in an Insolvency Proceeding or otherwise, including the election to retain Collateral in satisfaction of a Lien, (c) the taking of any action or the exercise of any right or remedy in respect of the collection on, set off against, marshaling of, or foreclosure on the Collateral or the Proceeds of Collateral, (d) the sale, lease, license, or other disposition of all or any portion of the Collateral, by private or public sale, other disposition or any other means permissible under applicable law, (e) the solicitation of bids from third parties to conduct the liquidation of all or a material portion of Collateral to the extent undertaken and being diligently pursued in good faith to consummate the sale of such Collateral within a commercially reasonable time, (f) the engagement or retention of sales brokers, marketing agents, investment bankers, accountants, appraisers, auctioneers or other third parties for the purposes of valuing, marketing, promoting and selling the Collateral to the extent undertaken and being diligently pursued in good faith to consummate the sale of such Collateral within a commercially reasonable time, and (g) the exercise of any other enforcement right relating to the Collateral (including the exercise of any voting rights relating to any Capital Stock and including any right of recoupment or set-off) whether under the First Lien Loan Documents, the Second Lien Loan Documents, applicable law, in an Insolvency Proceeding or otherwise.

"<u>Exigent Circumstance</u>" has the meaning set forth in <u>Section 10.b</u>.

"<u>First Lien Agent</u>" means the Original First Lien Agent, together with its successors, assigns, transferees and any Person that has a similar title (such as "Agent", "Collateral Agent" or "Administrative Agent") under any First Lien Credit Agreement.

"<u>First Lien Credit Agreement</u>" means the Original First Lien Credit Agreement as amended, restated, modified, renewed, refunded, replaced, or refinanced in whole or in part from time to time, and any other agreement extending the maturity of, consolidating, otherwise restructuring (including adding Subsidiaries or affiliates of any Obligor or any other Persons as parties thereto), renewing, replacing or refinancing all or any portion of the Obligations or Commitments as those terms are defined in the Original First Lien Credit Agreement or all or any portion of the amounts owed under any other agreement that itself is a First Lien Credit Agreement hereunder and whether by the same or any other agent, lender, or group of lenders and whether or not increasing the amount of First Lien Indebtedness that may be incurred thereunder, in each case, to the extent that any such amendment, restatement, modification, renewal, refunding, replacement, or refinancing is permitted under this Agreement.

"First Lien Default" means any Event of Default under the First Lien Credit Agreement.

"First Lien Indebtedness" means all obligations and all other amounts owing, due or secured under the terms of the First Lien Credit Agreement, any other First Lien Loan Document, any document related to a Bank Product Obligation or any Secured Rate Contract, including any and all amounts payable to any First Lien Lender, all principal, premium, interest, fees, attorneys fees, costs, charges, expenses, reimbursement obligations, any obligation to post cash collateral in respect of letters of credit or indemnities in respect thereof, indemnities, guarantees, Bank Product Obligations, Secured Swap Obligations, and all other amounts payable under any First Lien Loan Document or in respect thereof (including, in each case, all amounts accruing on or after the commencement of any Insolvency Proceeding relating to any Obligor, or that would have accrued or become due under the terms of the First Lien Loan Documents but for the effect of the Insolvency Proceeding or other applicable law, and irrespective of whether a claim for all or any portion of such amounts is allowable or allowed in such Insolvency Proceeding).

"First Lien Lender Sale" has the meaning set forth in Section 2.e(1).

"First Lien Lenders" means (i) the Original First Lien Lenders, together with the lenders under any First Lien Credit Agreement or First Lien Loan Documents, (ii) the Secured Swap Providers and each other holder of First Lien Indebtedness.

"First Lien Loan Documents" means the First Lien Credit Agreement and the other Loan Documents (as such term is defined in the Original First Lien Credit Agreement), or any other security, collateral, ancillary or other document entered into in connection with or related to any agreement that is a First Lien Credit Agreement, as such documents may be amended, restated, modified, renewed, refunded, replaced, or refinanced in whole or in part from time to time.

"First Lien Modification" has the meaning set forth in Section 6.a.

"First Lien Obligor" means each First Lien Borrower, and each other Person that now or hereafter is, or whose assets now or hereafter are, liable for all or any portion of the First Lien Indebtedness.

"Forced Obligor Sale" has the meaning set forth in Section 2.e(2).

"Insolvency Proceeding" means any proceeding commenced by or against any Person under any provision of the Bankruptcy Code or under any other state, provincial or federal or foreign bankruptcy or insolvency law, assignments for the benefit of creditors, formal or informal moratoria, compositions, extensions generally with creditors, or proceedings seeking reorganization, arrangement, or other similar relief and including the appointment of a trustee, receiver, administrative receiver, administrator or similar Person.

"Lender" means a First Lien Lender or a Second Lien Lender, as the context may require.

"Lien" means any interest in an asset securing an obligation owed to, or a claim by, any Person other than the owner of the asset, irrespective of whether (a) such interest is based on the common law, statute, or contract, (b) such interest is recorded or perfected, and (c) such interest is contingent upon the occurrence of some future event or events or the existence of some future circumstance or circumstances. Without limiting the generality of the foregoing, the term "Lien" includes the lien or security interest arising from a mortgage, deed of trust, encumbrance, pledge, hypothecation, assignment, deposit arrangement, security agreement, conditional sale or trust receipt, or from a lease, consignment, or bailment for security purposes and also includes reservations, exceptions, encroachments, easements, rights-of-way, covenants, conditions, restrictions, leases, and other title exceptions and encumbrances affecting real property.

"Maximum Priority First Lien Loan Amount" means, as of any date of determination, the result of (a) the sum of (i) the aggregate principal amount (including the undrawn amount of all letters of credit and all other credit accommodations) of First Lien Indebtedness (other than Secured Swap Obligations and Bank Product Obligations) as of such date up to, but not in excess of $88,248,732.50, plus (ii) any interest, fees, attorneys fees, costs, expenses, and indemnities payable on account of such principal amount under the First Lien Loan Documents or a Secured Rate Contract or in respect thereof (other than any amounts that would constitute Excluded First Lien Indebtedness pursuant to clauses (b), (c) or (d) of the definition of Excluded First Lien Indebtedness), plus (iii) in an aggregate amount not to exceed $2,000,000, the aggregate amount of Secured Swap Obligations as of such date and Bank Product Obligations as of such date minus (b) the aggregate amount of all principal payments and prepayments of the Term Loans (as defined in the Original First Lien Credit Agreement or any comparable term in any successor First Lien Credit Agreement) actually received by the First Lien Lenders (other than in connection with a refunding, replacement or refinancing thereof pursuant to an agreement which constitutes a First Lien Credit Agreement).

"Notice of Intent to Exercise" means a written notice from or on behalf of Second Lien Agent to First Lien Agent stating that Second Lien Agent intends to Exercise Secured Creditor Remedies and stating that it is a "Notice of Intent to Exercise Secured Creditor Remedies".

"Obligor" means each First Lien Obligor, each Second Lien Obligor, and any other Person that now or hereafter is, or whose assets now or hereafter are, liable for all or any portion of the First Lien Indebtedness or the Second Lien Indebtedness, as applicable.

"One-Day Period" has the meaning set forth in Section 20.

"Ordinary Course Collections" has the meaning set forth in Section 9.a.

"Payment Collateral" means all accounts, instruments, chattel paper, letters of credit, deposit accounts, securities accounts, and payment intangibles, together with all supporting obligations (as those terms are defined in the UCC), in each case composing a portion of the Collateral.

"Permitted Interest Payments" has the meaning set forth in Section 5.i.

"**Permitted Replacement Lien**" has the meaning set forth in <u>Section 5.d.</u>

"**Person**" means any natural person, a trustee under the Bankruptcy Code, corporation, limited liability company, limited partnership, general partnership, limited liability partnership, joint venture, trust, land trust, business trust, or other organization, irrespective of whether such organization is a legal entity, and shall include a government and any agency or political subdivision thereof.

"**Priority Status**" has the meaning set forth in <u>Section 5.g.</u>

"**Proceeds**" means (a) all "proceeds" as defined in Article 9 of the UCC with respect to the Collateral, and (b) whatever is recoverable or recovered when Collateral is sold, exchanged, collected, or disposed of, whether voluntarily or involuntarily.

"**Purchase Notice**" has the meaning set forth in <u>Section 10.a.</u>

"**Recovery**" has the meaning set forth in <u>Section 5.c.</u>

"**Reorganization Debt Securities**" has the meaning set forth in <u>Section 5.a.</u>

"**Second Lien Agent**" means the Original Second Lien Agent, together with its successors, assigns, transferees and any Person that has a similar title (such as "Agent", "Collateral Agent" or "Administrative Agent") under any Second Lien Credit Agreement.

"**Second Lien Credit Agreement**" means the Original Second Lien Credit Agreement as amended, restated, modified, renewed, refunded, replaced, or refinanced in whole or in part from time to time, and any other agreement extending the maturity of, consolidating, otherwise restructuring (including adding Subsidiaries or affiliates of any Obligor or any other Persons as parties thereto), renewing, replacing or refinancing all or any portion of the Obligations or Commitments as those terms are defined in the Original Second Lien Credit Agreement or all or any portion of the amounts owed under any other agreement that itself is a Second Lien Credit Agreement hereunder and whether by the same or any other agent, lender, or group of lenders and whether or not increasing the amount of Second Lien Indebtedness that may be incurred thereunder, in each case, to the extent that any such amendment, restatement, modification, renewal, refunding, replacement, or refinancing is permitted under this Agreement.

"**Second Lien Indebtedness**" means all obligations and all other amounts owing, due or secured under the terms of the Second Lien Credit Agreement or any other Second Lien Loan Document, including any and all amounts payable to any Second Lien Lender, all principal, premium, interest, fees, attorneys fees, costs, charges, expenses, reimbursement obligations, any obligation to post cash collateral in respect of letters of credit or indemnities in respect thereof, indemnities, guarantees, and all other amounts payable under any Second Lien Loan Document or in respect thereof (including, in each case, all amounts accruing on or after the commencement of any Insolvency Proceeding relating to any Obligor, or that would have accrued or become due under the terms of the Second Lien Loan Documents but for the effect of the Insolvency Proceeding or other applicable law, and irrespective of whether a claim for all or any portion of such amounts is allowable or allowed in such Insolvency Proceeding).

"Second Lien Lenders" means (i) the Original Second Lien Lenders, together with the lenders under any Second Lien Credit Agreement or Second Lien Loan Documents and (ii) each other holder of Second Lien Indebtedness.

"Second Lien Loan Documents" means the Second Lien Credit Agreement and the other Loan Documents (as such term is defined in the Original Second Lien Credit Agreement), or any other security, collateral, ancillary or other document entered into in connection with or related to any agreement that is a Second Lien Credit Agreement, as such documents may be amended, restated, modified, renewed, refunded, replaced, or refinanced in whole or in part from time to time, in accordance with this Agreement.

"Second Lien Modification" has the meaning set forth in Section 6.b.

"Second Lien Obligor" means each Second Lien Borrower and each other Person that now or hereafter is, or whose assets now or hereafter are, liable for all or any portion of the Second Lien Indebtedness.

"Secured Rate Contract" shall have the meaning set forth in the Original First Lien Credit Agreement.

"Secured Swap Provider" shall have the meaning set forth in the Original First Lien Credit Agreement.

"Secured Swap Obligations" means all obligations owing to one or more Secured Swap Providers pursuant to one or more Secured Rate Contracts.

"Standstill Notice" means a written notice from First Lien Agent to Second Lien Agent stating that a First Lien Default has occurred and is continuing and stating that it is a "Standstill Notice".

"Standstill Period" means the period beginning on the date that a Standstill Notice is received by Second Lien Agent through and including the first to occur of (a) the date upon which the Discharge of Priority First Lien Indebtedness shall have occurred, (b) the date upon which First Lien Agent shall have waived or acknowledged in writing the termination of the First Lien Default that gave rise to such Standstill Period, (c) 120 days from the date of receipt by Second Lien Agent from First Lien Agent of a Standstill Notice initiating such Standstill Period or (d) to the extent that First Lien Agent delivers a Standstill Notice during the 10 day period contemplated in Section 2.b after receipt of a Notice of Intent to Exercise from Second Lien Agent, 120 days from the date of receipt by First Lien Agent of such Notice of Intent to Exercise from Second Lien Agent.

"Trigger Event" has the meaning set forth in Section 10.a.

"Trigger Notice" has the meaning set forth in Section 10.a.

"UCC" means the Uniform Commercial Code as enacted and in effect from time to time in the State of New York; provided, however, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection, priority, or remedies with respect to Agent's Lien on any Collateral is governed by the Uniform Commercial Code as

enacted and in effect in a jurisdiction other than the State of New York, the term "UCC" shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority, or remedies.

c.      Terms Defined in the Original First Lien Credit Agreement.  Unless otherwise defined in this Agreement, any and all initially capitalized terms set forth in this Agreement shall have the meaning ascribed thereto in the Original First Lien Credit Agreement as of the date hereof.

d.      Rules of Construction.  Unless the context of this Agreement clearly requires otherwise, references to the plural include the singular, references to the singular include the plural, the term "including" is not limiting, and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or."  The words "hereof," "herein," "hereby," "hereunder," and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement.  Article, section, subsection, clause, schedule, and exhibit references herein are to this Agreement unless otherwise specified. Any reference herein to any Person shall be construed to include such Person's successors and assigns.  Any agreement, consent, waiver, or acceptance, as applicable, by the First Lien Agent set forth herein shall be construed to mean an agreement, consent, waiver, or acceptance, as applicable, by the First Lien Agent on behalf of itself and each of the First Lien Lenders.  Any agreement, consent, waiver, or acceptance, as applicable, by the Second Lien Agent set forth herein shall be construed to mean an agreement, consent, waiver, or acceptance, as applicable, by the Second Lien Agent on behalf of itself and each of the Second Lien Lenders.

2.      Subordination and Standstill.

a.      Lien Subordination.  Notwithstanding (i) the date, time, method, manner or order of grant, attachment, or perfection of any Liens granted to First Lien Agent (or any First Lien Lender) or Second Lien Agent (or any Second Lien Lender) in respect of all or any portion of the Collateral, (ii) the order or time of filing or recordation of any document or instrument for perfecting the Liens in favor of First Lien Agent (or any First Lien Lender) or Second Lien Agent (or any Second Lien Lender) in any Collateral, (iii) any provision of the UCC, any other applicable law, any of the First Lien Loan Documents or the Second Lien Loan Documents, (iv) except to the extent set forth below in this Section 2.a, irrespective of whether the Liens securing the First Lien Loan Documents are valid, perfected, enforceable, void, avoidable, subordinated, disputed or allowed, or (v) except to the extent set forth below in this Section 2.a, any other circumstance whatsoever, First Lien Agent and Second Lien Agent hereby agree that:

(1)      any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of Second Lien Agent or any Second Lien Lender that secures all or any portion of the Second Lien Indebtedness, shall in all respects be junior and subordinate to all Liens granted to First Lien Agent and the First Lien Lenders in such Collateral to secure all or any portion of the First Lien Indebtedness (other than any Excluded First Lien Indebtedness),

(2)      any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of Second Lien Agent or any Second Lien Lender that secures all or any portion of the Excluded Second Lien Indebtedness, shall in all respects be junior and subordinate to all Liens granted to First Lien Agent and the First Lien Lenders in such Collateral

- 10 -

to secure all or any portion of the First Lien Indebtedness (including any Excluded First Lien Indebtedness),

(3)     any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of First Lien Agent or any First Lien Lender that secures all or any portion of the First Lien Indebtedness (other than any Excluded First Lien Indebtedness) shall in all respects be senior and prior to all Liens granted to Second Lien Agent and the Second Lien Lenders in the Collateral to secure all or any portion of the Second Lien Indebtedness,

(4)     any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of First Lien Agent or any First Lien Lender that secures all or any portion of the Excluded First Lien Indebtedness shall in all respects be senior and prior to all Liens granted to Second Lien Agent and the Second Lien Lenders in the Collateral to secure all or any portion of the Excluded Second Lien Indebtedness,

(5)     any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of First Lien Agent or any First Lien Lender that secures all or any portion of the Excluded First Lien Indebtedness, shall in all respects be junior and subordinate to all Liens granted to Second Lien Agent and the Second Lien Lenders in the Collateral to secure all or any portion of the Second Lien Indebtedness (other than any Excluded Second Lien Indebtedness), and

(6)     any Lien in respect of all or any portion of the Collateral now or hereafter held by or on behalf of Second Lien Agent or any Second Lien Lender that secures all or any portion of the Second Lien Indebtedness (other than any Excluded Second Lien Indebtedness) shall in all respects be senior and prior to all Liens granted to First Lien Agent and the First Lien Lenders in the Collateral to secure all or any portion of the Excluded First Lien Indebtedness.

Notwithstanding the foregoing and any other provision to the contrary contained in this Agreement First Lien Agent and the First Lien Lenders agree not to contractually subordinate, or otherwise contractually relinquish the benefits of, their Lien in any Collateral to the Lien, indebtedness or claim of any other creditor of any Obligor without the prior written consent of Second Lien Agent.  The subordination of Liens provided for in this Agreement shall not be effective with respect to any part of the Collateral as to which the Liens of First Lien Agent and the First Lien Lenders are finally determined by a non-appealable court order in an Insolvency Proceeding to be invalid, unenforceable, or void as a result of any action taken by First Lien Agent, or any failure by First Lien Agent to take any action, with respect to any financing statement (including any amendment to or continuation thereof), mortgage, intellectual property filing or other perfection document, in which event, notwithstanding the provisions of Sections 8 and 9 hereof, Second Lien Agent and the Second Lien Lenders shall be entitled to receive and retain all Proceeds with respect to such Collateral to the extent that the Liens of Second Lien Agent and the Second Lien Lenders have not been finally determined by a non-appealable court order in an Insolvency Proceeding to be invalid, unenforceable, or void with respect to such Collateral.  The parties hereto agree that the provisions of the immediately preceding sentence shall not apply (and the subordination shall be effective) with respect to any item of Collateral in the event that (x) Second Lien Agent does not comply with its obligations under Section 2.h below with respect to such item of Collateral or (y) if a notice is delivered to

First Lien Agent in accordance with the second sentence of <u>Section 2.h</u> below with respect to such Collateral, such notice is delivered less than 90 days before the date that an Insolvency Proceeding involving the Obligor that owns such item of Collateral is commenced and the Lien of First Lien Agent as to such items of Collateral is avoided under Section 547 of the Bankruptcy Code.

      b.    <u>Remedies Standstill.</u>  At any time that a Standstill Period is in effect, the Second Lien Agent shall not (and no Second Lien Lender shall), without the prior written consent of First Lien Agent,

      (1)    commence, prosecute, or participate in any lawsuit, action, or proceeding, whether private, judicial, equitable, administrative or otherwise (including any bankruptcy case against any Obligor or any Obligor's assets) to the extent that any such action could reasonably be expected, in any material respect, to restrain, hinder, limit, delay for any material period or otherwise interfere with the Exercise of Secured Creditor Remedies by First Lien Agent or First Lien Lenders; <u>provided</u> that (A) to the extent that commencing, prosecuting, or participating in any such lawsuit, action, or proceeding could not reasonably be expected, in any material respect, to restrain, hinder, limit, delay for any material period or otherwise interfere with the Exercise of Secured Creditor Remedies by First Lien Agent or First Lien Lenders and Second Lien Agent does, in fact, commence, prosecute, or participate in any such lawsuit, action, or proceeding, then Second Lien Agent shall give First Lien Agent prompt written notice of any such action, and (B) as more fully set forth in <u>Section 5</u>, Second Lien Agent and the Second Lien Lenders may file a proof of claim in any Insolvency Proceeding involving any Obligor,

      (2)    Exercise Any Secured Creditor Remedies,

      (3)    send any notice to or otherwise seek to obtain payment directly from any account debtor of any Obligor, sue for an attachment, an injunction to enjoin any Exercise of Secured Creditor Remedies by First Lien Agent or First Lien Lenders, a keeper, a receiver or any other similar legal or equitable remedy, exercise any rights of set off or recoupment as against any Obligor, or

      (4)    commence or cause to be commenced or join with any creditor in commencing any Insolvency Proceeding against any Obligor or any Obligor's assets.

      Notwithstanding any other provision hereof, (i) Second Lien Agent may not (and no Second Lien Lender shall) exercise any of the remedies described in <u>clauses (1)</u> through <u>(4)</u> above so long as (A) First Lien Agent at such time has commenced and diligently is pursuing in good faith any Exercise of Secured Creditor Remedies with respect to all or a material portion of the Collateral, or (B) First Lien Agent and Second Lien Agent are both enjoined from the Exercise of Secured Creditor Remedies, in each case, unless and until the Discharge of Priority First Lien Indebtedness shall have occurred; and (ii) Second Lien Agent may not exercise any of the remedies described in <u>clauses (1)</u> through <u>(4)</u> above without first providing First Lien Agent at least 10 days prior written notice in the form of a Notice of Intent to Exercise (it being understood that if First Lien Agent does not deliver a Standstill Notice to Second Lien Agent by the end of such 10 day period, Second Lien Agent may proceed with the exercise of such remedies unless Second Lien Agent is prohibited from exercising such remedies in accordance with <u>clause (i)</u> of this sentence, and if Second Lien Agent elects to exercise such remedies, First

- 12 -

Lien Agent may not exercise any of the remedies of the type described in <u>clauses (1)</u> through <u>(4)</u> above so long as Second Lien Agent at such time has commenced and diligently is pursuing in good faith any Exercise of Secured Creditor Remedies with respect to all or a material portion of the Collateral, unless and until the Discharge of Priority Second Lien Indebtedness shall have occurred); <u>provided</u>, that Second Lien Agent shall not be required to provide a Notice of Intent to Exercise to First Lien Agent in connection with a permitted Exercise of Secured Creditor Remedies upon the termination of any Standstill Period.

c.      <u>Limitation on Standstill Periods</u>.  Subject to <u>clause (i)</u> in the last paragraph of <u>Section 2.b</u>, in no event shall a Standstill Period extend beyond the earlier to occur of (1) 120 days from the date of receipt by Second Lien Agent from First Lien Agent of a Standstill Notice initiating such Standstill Period or (2) to the extent that First Lien Agent delivers a Standstill Notice during the 10 day period contemplated in <u>Section 2.b</u> after receipt of a Notice of Intent to Exercise from Second Lien Agent, 120 days from the date of receipt by First Lien Agent of such Notice of Intent to Exercise from Second Lien Agent of a Notice of Intent to Exercise prior to the commencement of such Standstill Period.  Any number of notices of a First Lien Default may be given during a Standstill Period, but no such notice shall extend such Standstill Period.  Only 2 Standstill Periods may be commenced within any 360 day period, and no subsequent Standstill Period may be commenced within 120 days after the termination of the immediately preceding Standstill Period unless the basis of such subsequent Standstill Period is an Event of Default that occurred after the termination of (and did not exist prior to or during) the immediately preceding Standstill Period (it being understood that, for purposes of this sentence, an Event of Default shall not be deemed to occur until First Lien Agent has knowledge or notice of such Event of Default).  No First Lien Default that existed or was continuing on the date of the commencement of any Standstill Period and that was known to First Lien Agent or any First Lien Lender will be, or can be, made the basis for the commencement of a second Standstill Period, whether or not within a period of 360 consecutive days, unless such First Lien Default has been cured or waived for a period of not less than 120 consecutive days.

d.      <u>Foreclosure Proceedings</u>.  <u>Section 2.b</u> shall not be construed to in any way limit or impair the right of:  (i) any Lender to bid for or purchase Collateral at any private or judicial foreclosure upon such Collateral initiated by either Agent or any Lender, (ii) Second Lien Agent and the Second Lien Lenders to join (but not control) any judicial foreclosure proceeding or other judicial lien enforcement proceeding with respect to the Collateral initiated by First Lien Agent or any First Lien Lender, to the extent that any such action could not reasonably be expected, in any material respect, to restrain, hinder, limit, delay for any material period or otherwise interfere with the Exercise of Secured Creditor Remedies by First Lien Agent or First Lien Lenders, and (iii) Second Lien Agent and the Second Lien Lenders to receive payments in accordance with the terms of this Agreement from the Proceeds of the collection, sale or other disposition of the Collateral.

e.      <u>Release of Liens</u>.

(1)      In the event of any private or public sale or other disposition of all or any portion of the Collateral by First Lien Agent after the occurrence and during the continuance of a First Lien Default (and prior to the date upon which the Discharge of Priority First Lien Indebtedness shall have occurred) in connection with the liquidation by First Lien Agent of all or any material portion of the Collateral and the collection by First Lien Agent of the

- 13 -

First Lien Indebtedness through the sale or other disposition of such Collateral (any such sale or other disposition, a "<u>First Lien Lender Sale</u>"), if at such time First Lien Agent and the First Lien Lenders shall not have made loans and provided letter of credit accommodations and other financial accommodations under the First Lien Loan Documents and otherwise (whether prior to or after the occurrence of an Insolvency Proceeding) in an amount in excess of the Maximum Priority First Lien Loan Amount, then Second Lien Agent agrees that such First Lien Lender Sale will be free and clear of the Liens securing the Second Lien Indebtedness (and, if First Lien Lender Sale includes Equity Interests in any Obligor, Second Lien Agent further agrees to release (i) the entities whose Equity Interests are sold from all Second Lien Indebtedness and (ii) all Liens on assets of such entities); <u>provided</u> that (x) First Lien Agent and the First Lien Lenders also release their Liens on such Collateral (and, if the First Lien Lender Sale includes Equity Interests in any Obligor, the entities whose Equity Interests are sold from all First Lien Indebtedness), (y) the Proceeds of any such First Lien Lender Sale are applied in accordance with <u>Section 9.b</u>, and (z) First Lien Agent shall have conducted such First Lien Lender Sale in a commercially reasonable manner (it being understood that if First Lien Agent complies with the Code in connection with delivery of notice in connection therewith, such notice is deemed to be sent within a commercially reasonable time before such First Lien Lender Sale).

(2)     In the event of any private or public sale or other disposition of all or substantially all of the Collateral by any Obligor with the consent of First Lien Agent after the occurrence and during the continuance of a First Lien Default (and prior to the date upon which the Discharge of Priority First Lien Indebtedness shall have occurred), which sale or other disposition is conducted by such Obligor with the consent of First Lien Agent in connection with the collection by First Lien Agent of the First Lien Indebtedness through the sale or other disposition of such Collateral (any such sale or other disposition, a "<u>Forced Obligor Sale</u>"), if at such time First Lien Agent and the First Lien Lenders shall not have made loans and provided letter of credit accommodations and other financial accommodations under the First Lien Loan Documents and otherwise (whether prior to or after the occurrence of an Insolvency Proceeding) in an amount in excess of the Maximum Priority First Lien Loan Amount, then Second Lien Agent agrees that such Forced Obligor Sale will be free and clear of the Liens securing the Second Lien Indebtedness (and, if the Forced Obligor Sale includes Equity Interests in any Obligor, Second Lien Agent further agrees release (i) the entities whose Equity Interests are sold from all Second Lien Indebtedness and (ii) all Liens on assets of such entities); <u>provided</u> that (x) First Lien Agent and the First Lien Lenders also release their Liens on such Collateral (and, if the Forced Obligor Sale includes Equity Interests in any Obligor, the entities whose Equity Interests are sold from all First Lien Indebtedness), (y) the Proceeds of any such Forced Obligor Sale are applied in accordance with <u>Section 9.b</u> (as if they were Proceeds received in connection with any Exercise of Secured Creditor Remedies), and (z) the Obligor conducting such Forced Obligor Sale shall have conducted such Forced Obligor Sale in a commercially reasonable manner as if such Forced Obligor Sale were being conducted by a secured creditor in accordance with the UCC.

(3)     Second Lien Agent agrees that, in connection with any First Lien Lender Sale meeting the conditions set forth in <u>Section 2.e(1)</u> above or Forced Obligor Sale meeting the conditions set forth in <u>Section 2.e(2)</u> above, upon the prior written request of First Lien Agent (which request shall specify the proposed terms of the sale and the type and amount of consideration to be received in connection therewith), it will execute or file any and all Lien releases or other documents reasonably requested by First Lien Agent in connection therewith;

provided, that (w) in the case of a First Lien Lender Sale, no such release documents shall be delivered to any Obligor, (x) in the case of a Forced Obligor Sale, no such release documents shall be delivered to any Obligor unless First Lien Agent has delivered its release documents to such Obligor, (y) no such release documents shall be delivered more than 5 days prior to the anticipated closing date of such sale or disposition, and (z) the effectiveness of any such release or termination by Second Lien Agent shall be subject to the sale or other disposition of the Collateral described in such request and on the terms described in such request or on substantially similar terms and shall lapse in the event such sale or other disposition does not occur within 10 days of the anticipated closing date (at which time First Lien Agent or the Obligors, as the case may be, shall promptly return all release documents to Second Lien Agent). Subject to the proviso in the immediately preceding sentence, in the event that Second Lien Agent fails to so execute or file any such Lien releases or other documents within 5 Business Days after receipt of written request from First Lien Agent, First Lien Agent is hereby irrevocably authorized to execute or file such Lien releases and other documents.

f.      Waiver of Right to Contest First Lien Indebtedness.  Second Lien Agent agrees that it and the Second Lien Lenders shall not, and hereby waives any right to, take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Liens of First Lien Agent in any Collateral, the validity, priority, enforceability or allowance of any of the claims of First Lien Agent or any holder of First Lien Indebtedness against any Obligor.  Second Lien Agent agrees that neither it nor the Second Lien Lenders will take any action that would interfere with any Exercise of Secured Creditor Remedies undertaken by First Lien Agent under the First Lien Loan Documents, including any public or private sale, lease, exchange, transfer, or other disposition of any Collateral, whether by foreclosure or otherwise, in any case to the extent permitted under this Agreement.  Second Lien Agent hereby waives any and all rights it and the Second Lien Lenders may have as a junior lien creditor or otherwise to contest, protest, object to, interfere with the manner in which First Lien Agent seeks to enforce the Liens in any Collateral so long as First Lien Agent acts in accordance with the terms of this Agreement.

g.      Waiver of Right to Contest Second Lien Indebtedness.  First Lien Agent agrees that it shall not, and hereby waives any right to, take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority (except to the extent expressly provided by this Agreement), enforceability, or perfection of the Liens of Second Lien Agent in any Collateral, the validity, priority (except to the extent expressly provided by this Agreement), enforceability or allowance of any of the claims of Second Lien Agent or any holder of Second Lien Indebtedness against any Obligor.  First Lien Agent agrees that it will not take any action that would, in any material respect, interfere with any Exercise of Secured Creditor Remedies undertaken by Second Lien Agent under the Second Lien Loan Documents, including any public or private sale, lease, exchange, transfer, or other disposition of any Collateral, whether by foreclosure or otherwise, in any case to the extent permitted under this Agreement.  First Lien Agent hereby waives any and all rights it and the First Lien Lenders may have as a secured creditor or otherwise to contest, protest, object to, interfere with the manner in which Second Lien Agent seeks to enforce the Liens in any Collateral so long as Second Lien Agent acts in accordance with the terms of this Agreement.

h.     Acknowledgement of Liens.  Second Lien Agent acknowledges and agrees that First Lien Agent, for the benefit of itself and the First Lien Lenders, has been granted Liens upon all of the Collateral in which Second Lien Agent has been granted Liens and Second Lien Agent hereby consents thereto.  If (i) any Obligor grants in favor of Second Lien Agent a Lien on any asset of such Obligor not constituting Collateral on the date hereof or (ii) Second Lien Agent otherwise obtains a non-consensual Lien (including, without limitation, a judgment lien, writ of attachment, or writ of execution) on any asset of such Obligor not constituting Collateral on the date hereof, Second Lien Agent agrees that it shall give First Lien Agent prompt written notice thereof (and in no event later than 5 Business Days after the date of such grant or acquisition), containing a detailed description of such asset (it being understood and agreed that the failure by Second Lien Agent to give such notice to First Lien Agent shall not affect the validity, perfection or enforceability of such Lien), and Second Lien Agent acknowledges that if First Lien Agent obtains a Lien on such asset, whether prior to or after the time that Second Lien Agent obtains a Lien on such asset, then the priority of such Lien will be subject to the terms and provisions of this Agreement.  First Lien Agent acknowledges and agrees that Second Lien Agent has been granted Liens upon all of the Collateral in which First Lien Agent has been granted Liens and First Lien Agent hereby consents thereto.  If (i) any Obligor grants in favor of First Lien Agent or any First Lien Lender a Lien on any asset of such Obligor not constituting Collateral on the date hereof or (ii) First Lien Agent or any First Lien Lender otherwise obtains a non-consensual Lien (including without limitation a judgment lien, writ of attachment, or writ of execution) on any asset of such Obligor not constituting Collateral on the date hereof, First Lien Agent agrees that it shall give Second Lien Agent prompt written notice thereof (and in no event later than 5 Business Days after the date of such grant or acquisition), containing a detailed description of such asset (it being understood and agreed that the failure by First Lien Agent to give such notice to Second Lien Agent shall not affect the validity, perfection or enforceability of such Lien), and First Lien Agent acknowledges that if Second Lien Agent obtains a Lien on such asset, whether prior to or after the time that First Lien Agent obtains a Lien on such asset, then the priority of such Lien will be subject to the terms and provisions of this Agreement.  The subordination of Liens by Second Lien Agent in favor of First Lien Agent and the First Lien Lenders shall not be deemed to subordinate Second Lien Agent's Liens to the Liens of any other Person that is not a holder of First Lien Indebtedness.

i.     Agent for Perfection.  First Lien Agent and Second Lien Agent each agree to hold all Control Collateral and Cash Collateral, as applicable, in their respective possession, custody, or control (or in the possession, custody, or control of agents or bailees for either) as a non-fiduciary agent for the other solely for the purpose of perfecting the security interest granted to each in such Control Collateral or Cash Collateral subject to the terms and conditions of this Section 2.i.  None of First Lien Agent or the First Lien Lenders or Second Lien Agent or the Second Lien Lenders, as applicable, shall have any obligation whatsoever to the others to assure that the Control Collateral is genuine or owned by any Obligor or any other Person or to preserve their respective rights or benefits or those of any Person.  The duties or responsibilities of First Lien Agent and Second Lien Agent under this Section 2.i are and shall be limited solely to holding or maintaining control of the Control Collateral and the Cash Collateral as a non-fiduciary agent for the other for purposes of perfecting the Lien held by Second Lien Agent or First Lien Agent, as applicable.  First Lien Agent is not and shall not be deemed to be a fiduciary of any kind for Second Lien Agent or any other Person.  Second Lien Agent is not and shall not be deemed to be a fiduciary of any kind for First Lien Agent or any other Person.

3. <u>Payment-In-Kind</u>. Until the Discharge of the First Lien Indebtedness shall have occurred, all interest owing with respect to the Second Lien Indebtedness shall be paid-in-kind and any cash payments of interest received by the Second Lien Agent or any Second Lien Lender prior to the Discharge of the First Lien Indebtedness shall be immediately payable by the Second Lien Agent and/or any such Second Lien Lender who received such cash payments to the First Lien Agent in accordance with <u>Section 8</u>.

4. [Intentionally Omitted].

5. <u>Insolvency Proceedings</u>.

a. <u>Continuing Priority</u>. This Agreement shall be applicable both before and after the filing of any Insolvency Proceeding and all converted or succeeding cases in respect thereof. The relative rights of the Agents and the Lenders in or to any distributions from or in respect of any Collateral or Proceeds of Collateral, shall continue after the filing thereof on the same basis as prior to the date of the petition, subject to any court order approving the financing of, or use of cash collateral by, any Obligor as debtor-in-possession. Second Lien Agent acknowledges and agrees that, in the event of a distribution of any notes or other debt securities under a plan of reorganization under any Insolvency Proceeding (such notes or other debt securities, "<u>Reorganization Debt Securities</u>") to each of (i) First Lien Agent and the First Lien Lenders and (ii) Second Lien Agent and the Second Lien Lenders, any Lien securing such Reorganization Debt Securities received by Second Lien Agent and the Second Lien Lenders shall be subordinated to any Lien securing the Reorganization Debt Securities received by First Lien Agent and the First Lien Lenders to the same extent that the Liens securing the Second Lien Indebtedness are subordinated to the Liens securing First Lien Indebtedness pursuant to the terms of this Agreement.

b. <u>Proof of Claim.</u> Subject to the restrictions set forth in this Agreement, in the event of any Insolvency Proceeding involving any Obligor or any property of any Obligor, Second Lien Agent shall retain the right to vote with respect to the Second Lien Indebtedness. If Second Lien Agent or any Second Lien Lender does not file a proper claim or proof of debt or other document or amendment thereof in the form required in any Insolvency Proceeding prior to 5 days before the expiration of time to file such claim or other document or amendment thereof, then First Lien Agent shall have the right (but not the obligation) in any such Insolvency Proceeding, and Second Lien Agent hereby irrevocably appoints First Lien Agent as Second Lien Agent's and Second Lien Lenders' lawful attorney in fact, to file and prove all claims therefor.

c. <u>Reinstatement.</u> If First Lien Agent, any First Lien Lender or any other holder of any First Lien Indebtedness is required in any Insolvency Proceeding or otherwise to turn over or otherwise pay any amount (a "<u>Recovery</u>") to the estate or to any creditor or representative of an Obligor or any other Person, then the First Lien Indebtedness shall be reinstated to the extent of such Recovery. If this Agreement shall have been terminated prior to such Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair, or otherwise affect the obligations of the parties hereto from such date of reinstatement. All rights, interests, agreements, and obligations of First Lien Agent, the First Lien Lenders and Second Lien Agent and the Second Lien Lenders under this Agreement shall remain in full force and effect and shall continue

- 17 -

irrespective of the commencement of, or any discharge, confirmation, conversion, or dismissal of any Insolvency Proceeding by or against any Obligor or any other Person and irrespective of any other circumstance which otherwise might constitute a defense available to, or a discharge of any Obligor or any other Person in respect of the First Lien Indebtedness. No priority or right of First Lien Agent, the First Lien Lenders or any other holder of First Lien Indebtedness shall at any time be prejudiced or impaired in any way by any act or failure to act on the part of any Obligor or any other Person or by the noncompliance by any Person with the terms, provisions, or covenants of the First Lien Loan Documents or the Second Lien Loan Documents, regardless of any knowledge thereof which First Lien Agent, the First Lien Lenders or any holder of First Lien Indebtedness may have.

      d.    <u>DIP Financing</u>. If any Obligor shall be subject to any Insolvency Proceeding and First Lien Agent shall desire, prior to the Discharge of Priority First Lien Indebtedness, to permit the use of cash collateral or to provide (or to act as an agent for one or more lenders which provide) any such Obligor financing (collectively, "<u>DIP Financing</u>") under Section 363 or Section 364 of the Bankruptcy Code (or any similar provision under the law applicable to any Insolvency Proceeding) to be secured by all or any portion of the Collateral, then Second Lien Agent agrees that, so long as (i) the aggregate principal amount of Indebtedness incurred pursuant to such DIP Financing, together with the aggregate principal amount of all other outstanding First Lien Indebtedness, does not exceed the Maximum Priority First Lien Loan Amount, (ii) the interest rate, fees, advance rates, lending limits and sublimits are commercially reasonable under the circumstances, (iii) Second Lien Agent retains a Lien on the Collateral (including Proceeds thereof arising after the commencement of such proceeding) with the same priority as existed prior to the commencement of the case under applicable law (an "<u>Adequate Protection Lien</u>"), (iv) Second Lien Agent receives a replacement lien (a "<u>Permitted Replacement Lien</u>") on post-petition assets to the same extent granted to First Lien Agent, with the same priority as existed prior to the commencement of the case under applicable law, and (v) such use of cash collateral or DIP Financing is subject to the terms of this Agreement, it will raise no objection to such DIP Financing. Second Lien Agent hereby agrees that its Liens in the Collateral shall be subordinated to the Liens securing such DIP Financing (and all obligations relating thereto) to the same extent and upon the same terms and conditions specified in this Agreement for the subordination of Second Lien Agent's and the Second Lien Lenders' Liens in the Collateral securing the Second Lien Indebtedness to the First Lien Agent's and the First Lien Lenders' Liens in the Collateral securing the First Lien Indebtedness.

      e.    <u>Alternative DIP Financings</u>. Nothing in this Agreement shall limit the rights of any Lender to object to post-petition financing or the use of cash collateral that is provided on terms other than those set forth in <u>Section 5.d</u>.

      f.    <u>Priming DIP Financing</u>. If the First Lien Agent (or one or more lenders for which the First Lien Agent is acting as an agent for) offers to provide a DIP Financing that meets the requirements set forth in <u>Section 5.d</u>, Second Lien Agent agrees that it shall not, directly or indirectly, provide, offer to provide or support any DIP Financing secured by a Lien senior to or pari passu with the Liens securing the First Lien Indebtedness; it being understood and agreed that First Lien Agent retains all rights to raise objections to any DIP Financing provided, offered or supported by Second Lien Agent.

g.    Other Waivers by Second Lien Agent.  Until the Discharge of Priority First Lien Indebtedness has occurred, Second Lien Agent agrees that it shall not without First Lien Agent's written consent to the contrary, (1) seek relief from the automatic stay of Section 362 of the Bankruptcy Code or any other stay in any Insolvency Proceeding in respect of any portion of the Collateral on which First Lien Agent then has a Lien, (2) take any action or vote in any way so as to directly or indirectly challenge or contest (A) the validity or the enforceability of the First Lien Credit Agreement, the other First Lien Loan Documents or the Liens granted to First Lien Agent and the First Lien Lenders with respect to the First Lien Indebtedness, (B) the rights and duties of First Lien Agent and the First Lien Lenders established in the First Lien Credit Agreement or any other First Lien Loan Document, or (C) any request by the First Lien Agent or any First Lien Lender with respect to adequate protection, (3) seek or request any adequate protection, other than (A) Permitted Interest Payments, (B) Adequate Protection Liens and Permitted Replacement Liens, and (C) priority administrative expense claim status with respect to the Second Lien Indebtedness ("Priority Status") which is and shall be subject to this Agreement to the extent applicable, (4) in the event that First Lien Agent obtains relief from the automatic stay under Section 362 of the Bankruptcy Code (or any similar provision) to Exercise Any Secured Creditor Remedies and First Lien Agent has commenced and is diligently pursuing in good faith actions to consummate a sale of all or any material portion of the Collateral in accordance with Section 363 or 365 of the Bankruptcy Code (or any similar provision) within a commercially reasonable time and in a commercially reasonable manner so as to maximize the value of such Collateral, seek, or support any request, to dismiss any Insolvency Proceeding or to convert an Insolvency Proceeding under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code, (5) in the event that First Lien Agent obtains relief from the automatic stay under Section 362 of the Bankruptcy Code (or any similar provision) to Exercise Any Secured Creditor Remedies, seek the appointment of a trustee or examiner with expanded powers for any Borrower or any Guarantor, or (6) object to any sale of all or any portion of the Collateral in accordance with Sections 363 or 365 of the Bankruptcy Code (or any similar provision), other than (A) any objection that an unsecured creditor could assert or (B) if First Lien Agent or any First Lien Lender objects to any such sale.

h.    Other Waivers by First Lien Agent.  Until the Discharge of Priority Second Lien Indebtedness has occurred, First Lien Agent agrees that it shall not without Second Lien Agent's written consent to the contrary, take any action or vote in any way so as to directly or indirectly challenge or contest (A) the validity or the enforceability of the Second Lien Credit Agreement, the other Second Lien Loan Documents or the Liens granted to Second Lien Agent and the Second Lien Lenders with respect to the Second Lien Indebtedness, or (B) the rights and duties of Second Lien Agent and the Second Lien Lenders established in the Second Lien Credit Agreement or any other Second Lien Loan Document to the extent such rights and duties are not and/or have not been exercised in contravention of this Agreement.

i.    Rights of Second Lien Agent and Second Lien Lenders to Adequate Protection.  First Lien Agent agrees that it will raise no objection to a request for adequate protection by Second Lien Agent and the Second Lien Lenders in the form of (i) payment of interest on the Second Lien Indebtedness during the pendency of an Insolvency Proceeding so long as the rate of interest so requested by Second Lien Agent and the Second Lien Lenders does not exceed the default rate of interest applicable to the Second Lien Indebtedness immediately prior to the commencement of such Insolvency Proceeding ("Permitted Interest Payments"), (ii) Adequate Protection Liens and Permitted Replacement Liens or (iii) Priority Status.

- 19 -

6.    Modifications of Indebtedness.

a.    First Lien Indebtedness. All First Lien Indebtedness at any time incurred by any Obligor shall be deemed to have been incurred, and all First Lien Indebtedness held by any First Lien Lender or other holder of First Lien Indebtedness shall be deemed to have been extended, acquired or obtained, as applicable, in reliance upon this Agreement, and, to the extent not otherwise required herein, Second Lien Agent hereby waives (i) notice of acceptance, or proof of reliance, by First Lien Agent, the First Lien Lenders or any other holder of First Lien Indebtedness of this Agreement, and (ii) notice of the existence, renewal, extension, accrual, creation, or non-payment of all or any part of the First Lien Indebtedness. Nothing contained in this Agreement shall preclude First Lien Agent, First Lien Lenders or any holder of First Lien Indebtedness from discontinuing the extension of credit to any Obligor (whether under the First Lien Credit Agreement or otherwise). Second Lien Agent, on behalf of itself and the Second Lien Lenders, hereby agrees that First Lien Agent shall have the right, at any time and from time to time, in its sole discretion without the consent of or notice to Second Lien Agent or any Second Lien Lender (except to the extent such notice or consent is required pursuant to the express provisions of this Agreement), and without incurring any liability to Second Lien Agent or any Second Lien Lender amend, restate, waive, supplement, replace, refinance, extend, consolidate, restructure, or otherwise modify (collectively, any "First Lien Modification") the First Lien Loan Documents, in any manner whatsoever, including any renewals, extensions or shortening of time of payments (even if such shortening causes any First Lien Indebtedness to be due on demand or  otherwise), and Second Lien Agent, on behalf of itself and the Second Lien Lenders, consents and agrees to any such First Lien Modification; provided that First Lien Agent and the First Lien Lenders shall obtain the prior written consent of Second Lien Agent, on behalf of the Second Lien Lenders, to any First Lien Modification that (i) changes (including a waiver of) the amount of any scheduled principal payment or any mandatory principal prepayment or extends the date for payment of any scheduled principal payment or any mandatory principal prepayment, including any First Lien Modifications in respect to Section 1.8 of the First Lien Credit Agreement, provided, that First Lien Agent may make modifications to Section 1.8 of the First Lien Credit Agreement that are immaterial and have no adverse effect on the Obligors, Second Lien Agent or any Second Lien Lender, (ii) increases the applicable interest rate margin with respect to any category of the First Lien Indebtedness by greater than 2 percentage points per annum (excluding the imposition of the default rate of interest in effect under the Original First Lien Loan Documents), (iii) modifies any existing covenant, representation, warranty or event of default or adds any new covenant, representation, warranty, or event of default which, in either case, specifically restricts one or more Obligors from making payments under the Second Lien Loan Documents or incurring Indebtedness under the Second Lien Loan Documents which payments or Indebtedness would be permitted under the First Lien Documents as in effect on the date hereof or (iv) modifies the definition of "Reserve" or Section 2.2(d) of the First Lien Credit Agreement, or any definition used in such definition or such Section, in a manner that would enable more credit to be made available. Other than the First Lien Modifications set forth in the proviso to this Section, Second Lien Agent waives notice of any such First Lien Modification, and agrees that no such First Lien Modification shall affect, release, or impair the subordinations or any other obligations of Second Lien Agent or any Second Lien Lender contained herein.

b.    Second Lien Indebtedness. All Second Lien Indebtedness at any time incurred by any Obligor shall be deemed to have been incurred, and all Second Lien Indebtedness held by any Second Lien Lender or other holder of Second Lien Indebtedness shall

- 20 -

be deemed to have been extended, acquired or obtained, as applicable, in reliance upon this Agreement, and, to the extent not otherwise required herein, First Lien Agent hereby waives (i) notice of acceptance, or proof of reliance, by Second Lien Agent, the Second Lien Lenders or any other holder of Second Lien Indebtedness of this Agreement, and (ii) notice of the existence, renewal, extension, accrual, creation, or non-payment of all or any part of the Second Lien Indebtedness. Nothing contained in this Agreement shall preclude Second Lien Agent, Second Lien Lenders or any holder of Second Lien Indebtedness from discontinuing the extension of credit to any Obligor (whether under the Second Lien Credit Agreement or otherwise). First Lien Agent hereby agrees that Second Lien Agent shall have the right, at any time and from time to time, in its sole discretion without the consent of or notice to First Lien Agent or any First Lien Lender (except to the extent such notice or consent is required pursuant to the express provisions of this Agreement), and without incurring any liability to First Lien Agent or any First Lien Lender amend, waive, restate, supplement, replace, refinance, extend, consolidate, restructure, or otherwise modify (collectively, any "Second Lien Modification") the Second Lien Loan Documents, in any manner whatsoever, including any renewals, extensions or shortening of time of payments (even if such shortening causes any Second Lien Indebtedness to be due on demand or otherwise); provided that Second Lien Agent and the Second Lien Lenders shall obtain the prior written consent of First Lien Agent, on behalf of the First Lien Lenders, to any Second Lien Modification that: (i) requires that any payment be made earlier than the date originally scheduled for such payment or any changes (including a waiver) of the amount of any mandatory principal prepayment, including any Second Lien Modifications in respect to Section 8 of the First Lien Credit Agreement, provided, that Second Lien Agent may make modifications to Section 8 of the Second Lien Credit Agreement that are immaterial and have no adverse effect on the Obligors, First Lien Agent or any First Lien Lender, (ii) increases the applicable cash interest rate with respect to the Second Lien Indebtedness by greater than 2 percentage points per annum (excluding the imposition of the default rate of interest in effect under the Original Second Lien Loan Documents), or (iii) modifies any existing covenant, representation, warranty or event of default or adds any new covenant, representation, warranty, or event of default which, in either case, specifically restricts one or more Obligors from making payments under the First Lien Loan Documents or incurring Indebtedness under the First Lien Loan Documents which payments or Indebtedness would be permitted under the Second Lien Documents as in effect on the date hereof or changes the priority in the application of any payments to First Lien Lenders. Other than the Second Lien Modifications set forth in the proviso to the immediately preceding sentence, First Lien Agent waives notice of any such Second Lien Modification, and agrees that no such Second Lien Modification shall affect, release, or impair any of the obligations of First Lien Agent contained herein.

c.      Notice of Acceptance and Other Waivers.

(1)      To the fullest extent permitted by applicable law, Second Lien Agent hereby waives: (i) notice of acceptance hereof; (ii) notice of any loans or other financial accommodations made or extended under the First Lien Credit Agreement, or the creation or existence of any First Lien Indebtedness; (iii) notice of the amount of the First Lien Indebtedness; (iv) notice of any adverse change in the financial condition of any Obligor or of any other fact that might increase such Second Lien Agent's or Second Lien Lenders' risk hereunder; (v) notice of presentment for payment, demand, protest, and notice thereof as to any instrument among the First Lien Loan Documents; (vi) notice of any Default or Event of Default under the First Lien Loan Documents or otherwise relating to the First Lien Indebtedness; and

(vii) all other notices (except if such notice is specifically required to be given to Second Lien Agent under this Agreement) and demands to which Second Lien Agent or any Second Lien Lender might otherwise be entitled. To the fullest extent permitted by applicable law, First Lien Agent hereby waives: (i) notice of acceptance hereof; (ii) notice of any loans or other financial accommodations made or extended under the Second Lien Credit Agreement, or the creation or existence of any Second Lien Indebtedness; (iii) notice of the amount of the Second Lien Indebtedness; (iv) notice of any adverse change in the financial condition of any Obligor or of any other fact that might increase such First Lien Agent's risk hereunder; (v) notice of presentment for payment, demand, protest, and notice thereof as to any instrument among the Second Lien Loan Documents; (vi) notice of any Default or Event of Default under the Second Lien Loan Documents or otherwise relating to the Second Lien Indebtedness; and (vii) all other notices (except if such notice is specifically required to be given to First Lien Agent under this Agreement) and demands to which First Lien Agent might otherwise be entitled.

(2)     To the fullest extent permitted by applicable law, Second Lien Agent waives the right by statute or otherwise to require First Lien Agent, any First Lien Lender or any holder of First Lien Indebtedness to institute suit against any Obligor or to exhaust any rights and remedies which any First Lien Agent, any First Lien Lender or any holder of First Lien Indebtedness has or may have against any Obligor. Second Lien Agent further waives any defense arising by reason of any disability or other defense (other than the defense that the Discharge of First Lien Indebtedness has occurred (subject to the provisions of <u>Section 5.c</u>)) of any Obligor or by reason of the cessation from any cause whatsoever of the liability of such Obligor in respect thereof. To the fullest extent permitted by applicable law, First Lien Agent waives the right by statute or otherwise to require Second Lien Agent, any Second Lien Lender or any holder of Second Lien Indebtedness to institute suit against any Obligor or to exhaust any rights and remedies which any Second Lien Agent, any Second Lien Lender or any holder of Second Lien Indebtedness has or may have against any Obligor. First Lien Agent further waives any defense arising by reason of any disability or other defense (other than the defense that the Discharge of Second Lien Indebtedness has occurred (subject to the provisions of <u>Section 5.c</u>)) of any Obligor or by reason of the cessation from any cause whatsoever of the liability of such Obligor in respect thereof

(3)     To the fullest extent permitted by applicable law, Second Lien Agent hereby waives: (i) any rights to assert against First Lien Agent, the First Lien Lenders or any other holder of First Lien Indebtedness any defense (legal or equitable), set-off, counterclaim, or claim which such Second Lien Agent may now or at any time hereafter have against any Obligor; (ii) except as otherwise set forth in this Agreement, any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of any First Lien Indebtedness, any Second Lien Indebtedness or any security for either; and (iii) the benefit of any statute of limitations affecting Second Lien Agent's obligations hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the First Lien Indebtedness shall similarly operate to defer or delay the operation of such statute of limitations applicable to such Second Lien Agent's obligations hereunder. To the fullest extent permitted by applicable law, First Lien Agent hereby waives: (i) any rights to assert against Second Lien Agent, the Second Lien Lenders or any other holder of Second Lien Indebtedness any defense (legal or equitable), set-off, counterclaim, or claim which such First Lien Agent may now or at any time hereafter have against any Obligor; (ii) except as otherwise set forth in this

Agreement, any defense, set-off, counterclaim, or claim, of any kind or nature, arising directly or indirectly from the present or future lack of perfection, sufficiency, validity, or enforceability of any Second Lien Indebtedness, any First Lien Indebtedness or any security for either; and (iii) the benefit of any statute of limitations affecting First Lien Agent's obligations hereunder or the enforcement thereof, and any act which shall defer or delay the operation of any statute of limitations applicable to the Second Lien Indebtedness shall similarly operate to defer or delay the operation of such statute of limitations applicable to such First Lien Agent's obligations hereunder.

(4)     Until such time as the Discharge of Priority First Lien Indebtedness shall have occurred, Second Lien Agent hereby postpones any right of subrogation Second Lien Agent or any Second Lien Lender has or may have as against any Obligor with respect to any First Lien Indebtedness.

(5)     None of First Lien Agent, any First Lien Lender or any other holder of First Lien Indebtedness or any of their respective affiliates, directors, officers, employees, or agents shall be liable for failure to demand, collect, or realize upon any of the Collateral or any Proceeds or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral or Proceeds thereof or to take any other action whatsoever with regard to the Collateral or any part or Proceeds thereof.  If First Lien Agent or any First Lien Lender honors (or fails to honor) a request by the First Lien Borrowers for an extension of credit pursuant to the First Lien Credit Agreement or any of the other First Lien Loan Documents, whether First Lien Agent or any First Lien Lender has knowledge that the honoring of (or failure to honor) any such request would constitute a default under the terms of the Second Lien Loan Documents or an act, condition, or event that, with the giving of notice or the passage of time, or both, would constitute such a default, or if First Lien Agent or any First Lien Lender otherwise should exercise any of its contractual rights or remedies under the First Lien Loan Documents (subject to the express terms and conditions hereof), neither First Lien Agent nor any First Lien Lender shall have any liability whatsoever to Second Lien Agent or any Second Lien Lender as a result of such action, omission, or exercise.  First Lien Agent and First Lien Lenders will be entitled to manage and supervise their loans and extensions of credit under the First Lien Loan Documents as First Lien Agent and First Lien Lenders may, in their sole discretion, deem appropriate, and First Lien Agent, each First Lien Lender and each other holder of First Lien Indebtedness may manage its loans and extensions of credit without regard to any rights or interests that Second Lien Agent or any Second Lien Lender may have in the Collateral or otherwise except as otherwise expressly set forth in this Agreement.  Second Lien Agent agrees that none of First Lien Agent, any First Lien Lender or any other holder of First Lien Indebtedness shall incur any liability as a result of a sale, lease, license, application or other disposition of all or any portion of the Collateral or any part or Proceeds thereof conducted in accordance with applicable law and the terms hereof.  Subject to the express terms and conditions of this Agreement, First Lien Agent, each First Lien Lender and each holder of First Lien Indebtedness may, from time to time, enter into agreements and settlements with Obligors as it may determine in its sole discretion without impairing any of the subordinations, priorities, rights or obligations of the parties under this Agreement, including substituting Collateral, releasing any Lien and releasing any Obligor. Second Lien Agent waives any and all rights it may have to require First Lien Agent, any First Lien Lender or any holder of First Lien Indebtedness to marshal assets, to exercise rights or remedies in a particular manner, or to forbear from exercising such rights and remedies in any particular manner or order.

- 23 -

(6)     None of Second Lien Agent, any Second Lien Lender or any other holder of Second Lien Indebtedness or any of their respective affiliates, directors, officers, employees, or agents shall be liable for failure to demand, collect, or realize upon any of the Collateral or any Proceeds or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral or Proceeds thereof or to take any other action whatsoever with regard to the Collateral or any part or Proceeds thereof.  If Second Lien Agent or any Second Lien Lender honors (or fails to honor) a request by the Second Lien Borrower for an extension of credit pursuant to the Second Lien Credit Agreement or any of the other Second Lien Loan Documents, whether Second Lien Agent or any Second Lien Lender has knowledge that the honoring of (or failure to honor) any such request would constitute a default under the terms of the First Lien Loan Documents or an act, condition, or event that, with the giving of notice or the passage of time, or both, would constitute such a default, or if Second Lien Agent or any Second Lien Lender otherwise should exercise any of its contractual rights or remedies under the Second Lien Loan Documents (subject to the express terms and conditions hereof), neither Second Lien Agent nor any Second Lien Lender shall have any liability whatsoever to First Lien Agent as a result of such action, omission, or exercise.  Second Lien Agent will be entitled to manage and supervise its loans and extensions of credit under the Second Lien Loan Documents as Second Lien Agent may, in its sole discretion, deem appropriate, and Second Lien Agent, each Second Lien Lender and each other holder of Second Lien Indebtedness may manage its loans and extensions of credit without regard to any rights or interests that First Lien Agent may have in the Collateral or otherwise except as otherwise expressly set forth in this Agreement.  First Lien Agent agrees that none of Second Lien Agent, any Second Lien Lender or any other holder of Second Lien Indebtedness shall incur any liability as a result of a sale, lease, license, application or other disposition of all or any portion of the Collateral or any part or Proceeds thereof conducted in accordance with applicable law and the terms hereof.  Subject to the express terms and conditions of this Agreement, Second Lien Agent, each Second Lien Lender and each holder of Second Lien Indebtedness may, from time to time, enter into agreements and settlements with Obligors as it may determine in its sole discretion without impairing any of the subordinations, priorities, rights or obligations of the parties under this Agreement, including substituting Collateral, releasing any Lien and releasing any Obligor.  First Lien Agent waives any and all rights it may have to require Second Lien Agent, any Second Lien Lender or any holder of Second Lien Indebtedness to marshal assets, to exercise rights or remedies in a particular manner, or to forbear from exercising such rights and remedies in any particular manner or order.  Subject to the express terms and conditions hereof, nothing contained in this Agreement shall limit or waive any right that Second Lien Agent and the Second Lien Lenders have to enforce any of the provisions of the Second Lien Loan Documents against any Obligor.

7.     <u>Indebtedness Owed Only to Lenders</u>.  As of the date of this Agreement, the entire Second Lien Indebtedness is owing only to the Second Lien Agent and Second Lien Lenders.  As of the date of this Agreement, the entire First Lien Indebtedness is owing only to the First Lien Agent and the First Lien Lenders.  Each Agent, First Lien Lender, Second Lien Lender, successor, assignee, or other transferee of any Agent, any of the Second Lien Lenders, or any of the First Lien Lenders shall be bound by the terms and conditions of this Agreement.

8.     <u>Payments Received by Second Lien Agent or the Second Lien Lenders</u>.  If at any time prior to the date upon which the Discharge of First Lien Indebtedness shall have occurred, Second Lien Agent or any Second Lien Lender receives any payment or distribution of any kind

or character, whether as a result of an Exercise of Any Secured Creditor Remedies or otherwise, whether in cash, property or securities, from or of any assets of any Obligor (or any Obligor's Subsidiaries), irrespective of whether such payment or distribution was of Collateral, of Proceeds thereof or of any other assets of such Obligor or such Subsidiary, in each case, in contravention of the express terms of this Agreement, Second Lien Agent or such Second Lien Lender shall be deemed to receive and hold the same in trust as trustee for the benefit of First Lien Agent and the First Lien Lenders and shall forthwith deliver such payment, distribution, or proceeds to First Lien Agent in precisely the form received (except for the endorsement or assignment by Second Lien Agent or such Second Lien Lender where necessary), for application in accordance with Section 9.b below to any of the First Lien Indebtedness, whether then due or yet to become due. In the event of the failure of Second Lien Agent or any Second Lien Lender to make any such endorsement or assignment to First Lien Agent within 5 Business Days after receipt of written request therefor from First Lien Agent, First Lien Agent and any of its officers or agents are hereby irrevocably authorized to make such endorsement or assignment and Second Lien Agent hereby irrevocably appoints First Lien Agent as the lawful attorney in fact of Second Lien Agent and Second Lien Lenders solely for the purpose of enabling First Lien Agent to make such endorsement or assignment in the name of Second Lien Agent or any Second Lien Lender.

9.  Application of Proceeds.

a.  Ordinary Course Collections. Second Lien Agent expressly acknowledges and agrees that no application of any Payment Collateral or Cash Collateral in the ordinary course of business and absent any affirmative enforcement action or remedies by First Lien Agent or any First Lien Lender to collect or otherwise realize upon such Payment Collateral or Cash Collateral (such Payment Collateral or Cash Collateral, "Ordinary Course Collections") shall constitute the Exercise of Secured Creditor Remedies under this Agreement. Notwithstanding anything to the contrary contained in this Agreement, from and after an Exercise of Secured Creditor Remedies by First Lien Agent or any First Lien Lender, the parties hereto hereby agree that all Proceeds of Collateral (including Payment Collateral and Cash Collateral) shall be applied in accordance with Section 9.b; provided, that, First Lien Agent shall not be obligated to apply Ordinary Course Collections in accordance with Section 9.b even if First Lien Agent or any First Lien Lender is otherwise Exercising Secured Creditor Remedies at such time so long as such Ordinary Course Collections do not arise from such Exercise of Secured Creditor Remedies.

b.  Application of Proceeds of Collateral. All Collateral and all Proceeds, received by any of First Lien Agent, First Lien Lenders, Second Lien Agent or Second Lien Lenders in connection with any Exercise of Secured Creditor Remedies shall be applied:

first, to the payment of costs and expenses of First Lien Agent in connection with such Exercise of Secured Creditor Remedies (to the extent First Lien Agent's Exercise of Secured Creditor Remedies is permitted hereunder),

second, to the payment of the First Lien Indebtedness (other than Excluded First Lien Indebtedness) in accordance with the First Lien Loan Documents or other relevant documents, ,

- 25 -

**third**, to the payment of costs and expenses of Second Lien Agent in connection with such Exercise of Secured Creditor Remedies (to the extent Second Lien Agent's Exercise of Secured Creditor Remedies is permitted hereunder),

**fourth**, to the payment of the Second Lien Indebtedness (other than Excluded Second Lien Indebtedness) in accordance with the Second Lien Loan Documents,

**fifth**, to the payment of the Excluded First Lien Indebtedness in accordance with the First Lien Loan Documents, and

**sixth**, to the payment of the Excluded Second Lien Indebtedness in accordance with the Second Lien Loan Documents.

10.      Second Lien Lender Purchase Option.

a.      Upon (i) receipt by Second Lien Agent of a notice (a "Trigger Notice") by First Lien Agent of the intent of First Lien Agent and the First Lien Lenders to (A) accelerate any First Lien Indebtedness, (B) Exercise Any Secured Creditor Remedies or (C) request that Second Lien Agent and the Second Lien Lenders release their Liens on the Collateral pursuant to Section 2.e hereof, (ii) the occurrence of a payment default under the Second Lien Loan Documents, (iii) the commencement of an Insolvency Proceeding with respect to any Obligor, or (iv) receipt by Second Lien Agent of a Standstill Notice (each, a "Trigger Event"), Second Lien Agent and the Second Lien Lenders shall have the option, exercised at any time thereafter, by delivery of notice by Second Lien Agent to First Lien Agent (a "Purchase Notice"), to purchase all (but not less than all) of the First Lien Indebtedness (other than the Excluded First Lien Indebtedness) from First Lien Agent and the First Lien Lenders. The Purchase Notice, if given, shall be irrevocable.

b.      First Lien Agent shall deliver to Second Lien Agent any Trigger Notice referred to in Section 10.a(i) above (i) in the absence of an Exigent Circumstance (defined below), not less than 5 Business Days prior to the taking of the earliest of the actions described in Section 10.a(i) or (ii) if Exigent Circumstances exist, as soon as practicable and in any event contemporaneously with the taking of such action. If Second Lien Agent sends to First Lien Agent a Purchase Notice within 5 Business Days of the occurrence of a Trigger Event, First Lien Agent and the First Lien Lenders shall not accelerate the First Lien Indebtedness or Exercise Any Secured Creditor Remedies, to the extent such action has not been taken, or request that Second Lien Agent and the Second Lien Lenders release their Liens on the Collateral pursuant to Section 2.e hereof, as the case may be, provided, that, the purchase and sale with respect to the First Lien Indebtedness (other than the Excluded First Lien Indebtedness) provided for in this Section 10 shall have closed within 5 Business Days after receipt by First Lien Agent of the Purchase Notice and First Lien Agent shall have received payment in full of the First Lien Indebtedness (other than the Excluded First Lien Indebtedness) as provided for herein within such 5 Business Day period. As used herein, "Exigent Circumstance" shall mean an event or circumstance that materially and imminently threatens the ability of First Lien Agent to realize upon all or a material part of the Collateral, such as, without limitation, fraudulent removal, concealment, or abscondment thereof, destruction (other than to the extent covered by insurance) or material waste thereof, or the failure of any Obligor after reasonable demand to maintain or reinstate adequate casualty insurance coverage with respect thereto.

c.      On the date specified by Second Lien Agent in the Purchase Notice (which shall not be more than 5 Business Days after the receipt by First Lien Agent of the Purchase Notice), First Lien Agent and the First Lien Lenders shall sell to Second Lien Agent and the Second Lien Lenders, and Second Lien Agent and the Second Lien Lenders who have elected to participate in such purchase shall purchase from First Lien Agent and the First Lien Lenders, the First Lien Indebtedness (other than the Excluded First Lien Indebtedness).

d.      Upon the date of such purchase and sale, Second Lien Agent and the Second Lien Lenders shall (i) pay to First Lien Agent and the First Lien Lenders as the purchase price therefor the full amount of all the First Lien Indebtedness (other than Excluded First Lien Indebtedness) (or in the case of (a) letters of credit, the cash collateralization as required by the Original First Lien Loan Documents following a First Lien Default, (b) Secured Swap Obligations, termination or cancellation of any and all related agreements (or the backing of all the relevant obligations by stand-by letters of credit or cash collateral in a manner as is reasonably satisfactory to the applicable Secured Swap Provider and in an amount equal to 105% of such obligations) or (c) Bank Product Obligations, the backing of all relevant obligations by standby letters of credit or cash collateral in a manner as is reasonably satisfactory to each applicable obligee of Bank Product Obligations and in an amount equal to 105% of such obligations) and   (ii) agree to reimburse First Lien Agent and the First Lien Lenders for all expenses to the extent earned or due and payable in accordance with the First Lien Loan Documents (including the reimbursement of extraordinary expenses, financial examination expenses and appraisal fees). Anything contained in this paragraph to the contrary notwithstanding, in the event that (X) the Second Lien Agent and Second Lien Lenders receive all or a portion of any prepayment premium, make-whole obligation or early termination fee payable pursuant to the First Lien Loan Documents in cash, (Y) all First Lien Indebtedness purchased by the Second Lien Agent and the Second Lien Lenders and all of the Second Lien Indebtedness (other than the Excluded Second Lien Indebtedness), including principal, interest and fees thereon and costs and expense of collection thereof (including reasonable attorneys fees and legal expenses), are repaid in full in cash, and (Z) the First Lien Credit Agreement is terminated, in each case, within 90 days following the date on which the Second Lien Agent and the Second Lien Lenders pay the purchase price described in this paragraph, then, within 3 Business Days after receipt by Second Lien Agent and the Second Lien Lenders of such amounts, the Second Lien Agent and the Second Lien Lenders shall pay a supplemental purchase price to the First Lien Agent and the First Lien Lenders in respect of their purchase under this Section 10 in an amount equal to the portion of the prepayment premium, make-whole obligation or early termination fee received by Second Lien Agent and the Second Lien Lenders  to which the First Lien Agent and the First Lien Lenders would have been entitled to receive had the purchase under this paragraph not occurred.  Such purchase price and cash collateral shall be remitted by wire transfer in federal funds to such bank account of First Lien Agent as First Lien Agent may designate in writing to Second Lien Agent for such purpose.  Interest shall be calculated to but excluding the Business Day on which such purchase and sale shall occur if the amounts so paid by Second Lien Agent and the Second Lien Lenders to the bank account designated by First Lien Agent are received in such bank account prior to 2:00 p.m., New York City time, and interest shall be calculated to and including such Business Day if the amounts so paid by Second Lien Agent and the Second Lien Lenders to the bank account designated by First Lien Agent are received in such bank account later than 2:00 p.m., New York City time.

- 27 -

e. Such purchase shall be expressly made without representation or warranty of any kind by First Lien Agent and the First Lien Lenders as to the First Lien Indebtedness so purchased or otherwise and without recourse to First Lien Agent or any First Lien Lender, except that each First Lien Lender shall represent and warrant: (i) the amount of the First Lien Indebtedness being purchased from it, (ii) that such First Lien Lender owns its portion of the First Lien Indebtedness so purchased free and clear of any Liens or encumbrances and (iii) such First Lien Lender has the right to assign such First Lien Indebtedness and the assignment is duly authorized by such First Lien Lender.

f. In the event that Second Lien Agent and Second Lien Lenders elect to purchase all (but not less than all) of the First Lien Indebtedness (other than the Excluded First Lien Indebtedness) pursuant to this <u>Section 10</u>, then First Lien Agent agrees to resign effective immediately under <u>Section 8.9</u> of the First Lien Credit Agreement.

11. <u>Representations; Additional Agreements.</u> First Lien Agent represents and warrants to Second Lien Agent that (a) it has the requisite power and authority to enter into, execute, deliver, and carry out the terms of this Agreement on behalf of itself and the First Lien Lenders and to legally bind each of the First Lien Lenders to the terms and conditions set forth herein and (b) when this Agreement is executed and delivered by First Lien Agent on behalf of itself and the First Lien Lenders, the essential provisions of this Agreement will be the legally valid and binding obligations of First Lien Agent and the First Lien Lenders, enforceable against the First Lien Agent and any First Lien Lenders in accordance with their terms. Second Lien Agent represents and warrants that (a) it has the requisite power and authority to enter into, execute, deliver, and carry out the terms of this Agreement on behalf of itself and the Second Lien Lenders and to legally bind each of the Second Lien Lenders to the terms and conditions set forth herein and (b) when this Agreement is executed and delivered by Second Lien Agent on behalf of itself and the Second Lien Lenders, the essential provisions of this Agreement will be the legally valid and binding obligations of Second Lien Agent and the Second Lien Lenders, enforceable against the Second Lien Agent and any Second Lien Lenders in accordance with their terms. Each party hereto hereby agrees that at no time shall such party contest the validity or enforceability of any provision of this Agreement; <u>provided</u>, <u>however</u>, that the foregoing shall not preclude any party hereto from contesting the interpretation of a particular provision of this Agreement or its application to a particular circumstance.

12. <u>Additional Remedies.</u>

a. If Second Lien Agent or any Second Lien Lender violates any of the terms of this Agreement, in addition to any remedies in law, equity, or otherwise that First Lien Agent may have as a result of such violation, First Lien Agent may (i) restrain such violation in any court of law or (ii) in its own or in any Obligor's name, interpose this Agreement as a defense in any action by Second Lien Agent or any Second Lien Lender. Upon First Lien Agent's written request, Second Lien Agent or any Second Lien Lender will promptly take all actions which First Lien Agent believes appropriate to carry out the purposes and provisions of this Agreement.

b. If First Lien Agent or any First Lien Lender violates any of the terms of this Agreement, in addition to any remedies in law, equity, or otherwise that Second Lien Agent may have as a result of such violation, Second Lien Agent may (i) restrain such violation in any court of law or (ii) in its own or in any Obligor's name, interpose this Agreement as a defense in

any action by First Lien Agent or First Lien Lenders. Upon Second Lien Agent's written request, First Lien Agent will promptly take all actions which Second Lien Agent believes appropriate to carry out the purposes and provisions of this Agreement.

13. <u>Amendments</u>. No amendment or waiver of any provision of this Agreement nor consent to any departure by any party hereto shall be effective unless it is in a written agreement executed by Second Lien Agent and First Lien Agent, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

14. <u>Instrument Legends</u>. Second Lien Agent agrees that the face of each promissory note evidencing the Second Lien Indebtedness or any portion thereof, shall be inscribed with a legend conspicuously indicating that such promissory note is subject to the terms of this Agreement. Any promissory note evidencing any of the Second Lien Indebtedness or any portion thereof, which is hereafter executed will, on the date thereof, be inscribed with a similar legend.

15. <u>Information Concerning Financial Condition</u>.

a. Second Lien Agent hereby assumes responsibility for keeping itself informed of the financial condition of Obligors and of all other circumstances bearing upon the risk of nonpayment of the Second Lien Indebtedness, and agrees that First Lien Agent and First Lien Lenders shall have no duty to advise Second Lien Agent or Second Lien Lenders of information known to First Lien Agent or First Lien Lenders regarding such condition or any such circumstances. In the event First Lien Agent or any First Lien Lender, in its sole discretion, undertakes, at any time or from time to time, to provide any such information to Second Lien Agent or Second Lien Lenders, First Lien Agent and First Lien Lenders shall be under no obligation (i) to provide any such information to Second Lien Agent or Second Lien Lenders on any subsequent occasion, (ii) to undertake any investigation, or (iii) to disclose any information which, pursuant to its commercial finance practices, First Lien Agent or any First Lien Lender wishes to maintain confidential. Second Lien Agent acknowledges and agrees that First Lien Agent and First Lien Lenders have made no warranties or representations with respect to the legality, validity, enforceability, collectability or perfection of the First Lien Indebtedness or any liens or security interests held in connection therewith.

b. First Lien Agent hereby assumes responsibility for keeping itself informed of the financial condition of Obligors and of all other circumstances bearing upon the risk of nonpayment of the First Lien Indebtedness, and agrees that Second Lien Agent has and shall have no duty to advise First Lien Agent of information known to Second Lien Agent regarding such condition or any such circumstances. In the event Second Lien Agent, in its sole discretion, undertakes, at any time or from time to time, to provide any such information to First Lien Agent, Second Lien Agent shall be under no obligation (i) to provide any such information to First Lien Agent on any subsequent occasion, (ii) to undertake any investigation, or (iii) to disclose any information which, pursuant to its commercial finance practices, Second Lien Agent wishes to maintain confidential. First Lien Agent acknowledges and agrees that Second Lien Agent has made no warranties or representations with respect to the legality, validity, enforceability, collectability or perfection of the Second Lien Indebtedness or any liens or security interests held in connection therewith.

16.    <u>Third Party Beneficiaries</u>.  This Agreement is solely for the benefit of First Lien Agent, First Lien Lenders, Second Lien Agent, and the Second Lien Lenders, and their respective successors and assigns, and neither any Obligor nor any other Persons are intended to be a third party beneficiary hereunder or to have any right, benefit, priority or interest under, or because of the existence of, or to have any right to enforce, this Agreement.  Nothing in this Agreement is intended to or shall be deemed to amend or modify the terms and conditions of the First Lien Loan Documents or the Second Lien Loan Documents.  First Lien Agent and Second Lien Agent shall have the right to modify or terminate this Agreement at any time without notice to or approval of any Obligor or any other Person.

17.    <u>No Impairment</u>.  Nothing in this Agreement is intended to or shall impair, as between Obligors and Second Lien Agent and the Second Lien Lenders, the obligation of Obligors, which is absolute and unconditional, to pay the Second Lien Indebtedness as and when the same shall become due and payable in accordance with its terms, or affect the relative rights of Second Lien Agent and the Second Lien Lenders and creditors of Obligors other than First Lien Agent and the First Lien Lenders.

18.    <u>Subrogation</u>.  Solely after the Discharge of First Lien Indebtedness shall have occurred, Second Lien Agent and the Second Lien Lenders shall be subrogated to the rights of First Lien Agent and the First Lien Lenders to the extent that distributions otherwise payable to Second Lien Agent or any Second Lien Lender have been applied to the payment of the First Lien Indebtedness in accordance with the provisions of this Agreement.  First Lien Agent and the First Lien Lenders shall have no obligation or duty to protect Second Lien Agent and the Second Lien Lenders' rights of subrogation arising pursuant to this Agreement or under any applicable law, nor shall First Lien Agent, First Lien Lenders or any other holder of First Lien Indebtedness be liable for any loss to, or impairment of, any subrogation rights held by Second Lien Agent or any Second Lien Lender.

19.    <u>Notices</u>.  All demands, notices, and other communications provided for hereunder shall be in writing and, if to Second Lien Agent, mailed or sent by telecopy or delivered to it, addressed to it as follows:

CERBERUS BUSINESS FINANCE, LLC
299 Park Avenue, 23rd Floor
New York, New York  10171
Attention:  Eric Miller
Telephone:  212-891-1549
Telecopier:  212-891-1541

With a copy to:

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA  90067
Attn:  Michael L. Tuchin and Maria Sountas-Argiropoulos
Facsimile:  (310) 407-9090
E-mail: mtuchin@ktbslaw.com and msargiropoulos@ktbslaw.com

and if to First Lien Agent, mailed, sent or delivered thereto, addressed to it as follows:

General Electric Capital Corporation
8377 East Hartford Drive
Suite 200
Scottsdale, Arizona 85255
Attention: F&H Acquisition Corp., Account Manager
Facsimile: (877) 529-2593

With a copy to:

General Electric Capital Corporation
201 Merritt 7
P.O. Box 5201
Norwalk, Connecticut 06851
Attn:  General Counsel-Global Sponsor Finance
Facsimile:  (203) 956-4216

and

General Electric Capital Corporation
500 West Monroe Street
Chicago, Illinois 60661
Attn:  Corporate Counsel-Global Sponsor Finance
Facsimile:  (312) 441-6876

and

Jeffrey G. Moran
Latham & Watkins LLP
233 South Wacker Drive
Chicago, Illinois 60606
Facsimile:  (312) 993-9767.

or as to any party at such other address as shall be designated by such party in a written notice to the other parties complying as to delivery with the terms of this Section 19.  All such demands, notices and other communications shall be effective, when mailed, three Business Days after deposit in the mails, postage prepaid, when sent by telecopy, when receipt is acknowledged by the receiving telecopy equipment (or at the opening of the next Business Day if receipt is after normal business hours), or when delivered, as the case may be, addressed as aforesaid.

20.     <u>Limitation on Protective Advances by Second Lien Agent</u>.  Notwithstanding Second Lien Agent's ability to make Agent Advances pursuant to Section 8.8(a) of the Second Lien Credit Agreement, the Second Lien Agent hereby agrees, on behalf of itself and the Second Lien Lenders, that, until the Discharge of Priority First Lien Indebtedness, the Second Lien Agent shall only make Agent Advances (a) after the occurrence and during the continuation of

- 31 -

an Event of Default, (b) when, in its sole discretion, Second Lien Agent deems necessary or desirable to preserve, protect, prepare for sale or lease or dispose of the Collateral or any portion thereof, to enhance the likelihood or maximize the amount of repayment by the Obligors of the Second Lien Indebtedness or to pay any other amount chargeable to the Obligors pursuant to the terms of the Second Lien Credit Agreement, and (c) if, within 1 Business Day of First Lien Agent receiving notice of such Event of Default (the "One-Day Period"), First Lien Agent has not made advances to preserve, protect, prepare for sale or lease or dispose of the Collateral; provided, however, that if Exigent Circumstances exist, Second Lien Agent may make Agent Advances prior to the One-Day Period so long as concurrently with the making of such Agent Advances, Second Lien Agent provides First Lien Agent notice, in reasonable detail, of the nature and circumstance of such Exigent Circumstance.

21.  Consent to Jurisdiction; Waiver of Jury Trial and Other Waivers.  Second Lien Agent and First Lien Agent each consent to the jurisdiction of any state or federal court located within the County of New York, State of New York.  Each Agent waives personal service of any and all process upon it, and consents that all service of process be made in the manner set forth in Section 19 of this Agreement for notices. Each Agent waives, to the fullest extent each may effectively do so, any defense or objection based upon forum non conveniens and any defense or objection to venue of any action instituted within the County of New York, State of New York. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION TO ENFORCE OR DEFEND ANY MATTER ARISING FROM OR RELATED TO THIS AGREEMENT.

22.  Governing Law.  This Agreement has been delivered and accepted at and shall be deemed to have been made in the State of New York, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of New York.

23.  Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns, subject to the provisions hereof.

24.  Integrated Agreement.  This Agreement sets forth the entire understanding of the parties with respect to the within matters and may not be modified or amended except upon a writing signed by all parties.

25.  Authority. Each of the parties hereto certifies that such party has all necessary authority to execute this Agreement.

26.  Counterparts. This Agreement may be executed in one or more counterparts, each one of which when so executed shall be deemed to be an original, and all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally effective as delivery of an original executed counterpart.

27.  Headings. The headings contained in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

28.     Severability.   Any provision of this Agreement that is prohibited by law or unenforceable shall be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision.   To the extent permissible, the parties waive any law that prohibits any provision of this Agreement or renders any provision hereof unenforceable.

29.     Conflicts.   To the extent that there is a conflict or inconsistency between any provision hereof, on the one hand, and any provision of any First Lien Loan Document or any Second Lien Loan Document, on the other hand, this Agreement shall control and prevail.   The foregoing to the contrary notwithstanding, a covenant in the First Lien Loan Documents prohibiting the Obligors from voluntarily prepaying the Second Lien Indebtedness shall not be deemed to be in conflict with or inconsistent with the terms of this Agreement.

30.     Termination.   This Agreement shall continue in full force and effect until the Discharge of First Lien Indebtedness shall have occurred and shall thereafter be revived to the extent provided for in Section 5.c.

[Remainder of page left intentionally blank]

CH\1759697.5

IN WITNESS WHEREOF, First Lien Agent, for and on behalf of itself and the First Lien Lenders, and Second Lien Agent, for and on behalf of itself and the Second Lien Lenders, have caused this Agreement to be duly executed and delivered as of the date first above written.

**GENERAL ELECTRIC CAPITAL CORPORATION**,
a Delaware corporation, as First Lien Agent

By: _____
Name: DAVID A. BURGER
Title: Duly Authorized Signatory

**CERBERUS BUSINESS FINANCE, LLC,** a Delaware limited liability company, as Second Lien Agent

By: _____

Name: Eric Miller

Title: Executive Vice President

## ACKNOWLEDGMENT

The Obligors hereby acknowledge that they have received a copy of the foregoing Intercreditor Agreement and consent thereto, agree to recognize all rights granted thereby to First Lien Agent, the First Lien Lenders, Second Lien Agent, and the Second Lien Lenders and will not do any act or perform any obligation which is not in accordance with the agreements set forth therein. The Obligors acknowledge and agree that they are not an intended beneficiary or third party beneficiary under this Agreement.

ACKNOWLEDGED AS OF THE DATE FIRST WRITTEN ABOVE:

**LAST CALL GUARANTOR, LLC**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary

**LAST CALL HOLDING CO. I, INC.**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary

**LAST CALL HOLDING CO. II, INC.**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary

**LAST CALL OPERATING CO I., INC.,**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary

**F&H RESTAURANTS IP, INC.**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary


**CHAMPPS RESTAURANTS IP, INC.**
a Delaware corporation

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary


**LAST CALL OPERATING CO II., INC.**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary


**MD LAST CALL INC.**

By: _____
Name: Jim Zielke
Title: Chief Financial Officer, Treasurer and Secretary

[Signature Page to Intercreditor Agreement]