## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| LAST CALL GUARANTOR, LLC, *et al.*[1] | ) Case No. 16-11844 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Ref Docket No. 141, 169 |

### FINAL ORDER AUTHORIZING DEBTORS TO:  (A) CONTINUE TO USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO FUN EATS AND DRINKS LLC, AS LENDER

This matter came before this Court on the motion (the "Motion") [Docket No. 141] of Last Call Guarantor, LLC and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") requesting that this Court enter a final order authorizing Debtors to: (a) continue to use certain Cash Collateral; (b) incur Postpetition Debt; and (c) grant adequate protection and provide security and other relief to Fun Eats and Drinks LLC ("FEAD"), in its capacity as Agent under the Prepetition Senior Credit Agreement ("Prepetition Senior Agent"), and FEAD, in its capacity as agent and lender under the Postpetition Credit Agreement ("Postpetition Agent" and "Postpetition Lender").  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable upon entry.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED AS SET FORTH HEREIN, AND THE COURT HEREBY FINDS THAT:**

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  Last Call Guarantor, LLC, Last Call Holding Co. I, Inc. (3962), Last Call Holding Co. II, Inc. (8727), Last Call Operating Co I., Inc. (3541), Last Call Operating Co II., Inc. (8272), F&H  Restaurants IP,

A.      On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code.  Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.      The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.      A Committee has been appointed in these Cases.

D.      On August 31, 2016, the Court entered the *Order Authorizing Debtors To: (A) Continue to Use Cash Collateral on an Emergency Basis Pending a Final Hearing; (B) Incur Postpetition Debt on an Emergency Basis Pending a Final Hearing; and (C) Grant Adequate Protection and Provide Security and Other Relief to Fun Eats and Drinks LLC, as Lender* [Docket No. 169] (the "First Interim Order").

E.      On September 14, 2016, the Court entered the *Second Interim Order Authorizing Debtors To: (A) Continue to Use Cash Collateral on an Emergency Basis Pending a Final Hearing; (B) Incur Postpetition Debt on an Emergency Basis Pending a Final Hearing; and (C) Grant Adequate Protection and Provide Security and Other Relief to Fun Eats and Drinks LLC, as Lender* [Docket No. 255] (the "Second Interim Order," collectively with the First Interim Order, the "Interim Order").

F.      Subject to Paragraph 8 of this Order, Debtors admit, stipulate and agree that:

1.      the Prepetition Senior Documents evidence and govern the Prepetition Senior Debt, the Prepetition Senior Liens and the prepetition financing relationship among Debtors, Prepetition Senior Agent and Prepetition Senior Lenders;

2.      the Prepetition Senior Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Senior Documents;

Inc. (0107), Champps Restaurants IP, Inc. (3776), KS Last Call Inc. (1480), and MD Last Call Inc. (9190).  The Debtors' business address is 19111 Dallas Pkwy, Unit 370, Dallas, TX 75287.

2

3.      as of the Filing Date, Debtors are liable for payment of the Prepetition Senior Debt, and the Prepetition Senior Debt shall be an allowed claim in an amount not less than approximately $83,700,000, exclusive of accrued and accruing amounts allowable under Code§ 506 (b);

4.      no offsets, defenses or counterclaims to the Prepetition Senior Debt exist, and no portion of the Prepetition Senior Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5.      the Prepetition Senior Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Senior Debt; and

6.      Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Senior Documents, the Prepetition Senior Liens, the Prepetition Senior Debt or otherwise, against the Prepetition Senior Agent or Prepetition Senior Lenders (in their capacities as such) and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

G.      Prepetition Senior Agent has consented to the terms of this Order and is entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of its interests in the Prepetition Senior Collateral from and after the Filing Date.

H.      Debtors need to continue to use Cash Collateral and incur Postpetition Debt as provided herein, in order to prevent immediate and irreparable harm to the estate and minimize disruption to and avoid the termination of their business operations.  Entry of this Order will further enhance the possibility of a sale of the Debtors' businesses as going concerns.

I.      Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses.  Except as provided below,

Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lender. Prepetition Senior Agent would not consent to any credit allowable under Code § 364(d) other than the Postpetition Debt provided by Postpetition Agent and Postpetition Lender.

J. The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

K. The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

L. Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Prepetition Senior Agent's consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

M. The Debtors were previously authorized to use Cash Collateral pursuant to the Cash Collateral Orders and the Interim Order and to obtain the Postpetition Debt under the Interim Order.

N. The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

O. The Investigation Period is established hereunder based on the fact that any potential Challenge would relate to prepetition secured debt that was previously approved by this Court in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361,362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, and (V) Modifying the Automatic Stay* entered in the Chapter 11 cases of *In re F&H Acquisition Corp., et al.,* Case No. 13-13220 (KG) [Docket No. 444 in the F&H Acquisition Corp. Chapter 11 Cases] (the

4

"F&H Final Financing Order") or was subject to an investigation period established by the F&H Final Financing Order.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.    <u>Authorization to Use Cash Collateral</u>.  Debtors are authorized to continue to use Cash Collateral solely in accordance with the terms and provisions of this Order, to the extent required to pay when due those expenses enumerated in the Budget, including the Carveout, and to pay the Postpetition Charges.

2.    <u>Procedure for Use of Cash Collateral</u>.

(a)    <u>Delivery of Cash Collateral to Postpetition Agent</u>.  Debtors shall maintain their cash management arrangements in a manner consistent with the Interim and Final Order, (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (B) Authorizing the Continued Use of Cash Management System, (C) Waiving Certain Investment and Deposit Guidelines and (D) Granting Administrative Expense Status to Postpetition Intercompany Claims [Docket No. 128].  At any time the Debtors are in possession of Cash Collateral in excess of the accrued and unpaid Budget expenses, Debtors shall deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent promptly upon receipt thereof.  If there is no Postpetition Debt outstanding, the Debtors are authorized to use Cash Collateral to fund Budget expenses subject to the terms and conditions of this Order.

(b)    <u>Cash Collateral in Lenders' Possession</u>.  Upon an Event of Default, Postpetition Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof.

(c)    <u>Application of Cash Collateral</u>.  Postpetition Agent is authorized to apply all Cash Collateral now or hereafter in Postpetition Agent or any Postpetition Lender's possession or control as follows: (1) first, to payment of Postpetition Debt consisting of Postpetition Charges; and (2) second, to payment of other Postpetition Debt in accordance with

the Postpetition Credit Agreement.  All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee.

(d)    Prohibition Against Use of Cash Collateral.  Except as provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363:  (1) Postpetition Agent and Prepetition Senior Agent have consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt and no obligation of any Postpetition Lender to extend Postpetition Debt; or (3) such Cash Collateral is first used to pay the Postpetition Debt in full in cash and the DIP Commitments are terminated.

3.    Authorization To Incur Postpetition Debt.

(a)    Postpetition Documents.  Pursuant to this Order, the Debtors are hereby authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Agent finds reasonably necessary to implement the transactions contemplated by the Postpetition Documents provided, that such documents are consistent with the Postpetition Debt Term Sheet and otherwise in form and substance acceptable to the Debtors; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order.  The Postpetition Documents constitute valid and binding obligations of Debtors enforceable in accordance with their terms.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, the Interim Order, and this Order, this Order shall govern and control.

(b)    Permitted Uses of Postpetition Debt.  Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order and the Postpetition Documents, (2) to the extent required to pay those expenses and make those disbursements enumerated in the Budget, including the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance, and (c) to pay the Postpetition Charges (by payment in kind and capitalizing such amounts whether or not in the Budget).  If any Postpetition Lender advances monies to Debtors and Debtors use such monies other than in accordance with the terms or provisions of this Order, such advances shall be

6

considered Postpetition Debt for purposes of this Order. Postpetition Debt shall be deemed to include amounts provided by Postpetition Lenders to cash collateralize all Prepetition Senior Debt consisting of Term A Letter of Credit Obligations and Term B Letter of Credit Obligations (as each term is defined in the Prepetition Senior Credit Agreement) in the amount of $2,892,415.42. Postpetition Agent will retain a security interest in the Debtors' reversionary interest in such Cash Collateral subject to the Carveout if and to the extent such Term A Letter of Credit Obligations and Term B Letter of Credit Obligations are reduced, provided that at all times the Cash Collateral for such remaining Term A Letter of Credit Obligation and Term B Letter of Credit Obligations is equal to 105% of such Prepetition Senior Debt pursuant to Section 7.4 of the Prepetition Senior Credit Agreement.

      (c)    <u>Additional Terms of Postpetition Debt</u>. Subject to the terms of this Order and the applicable Postpetition Documents, the following terms apply to the Postpetition Debt:

      (i)    <u>Maximum Amount</u>. The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed $5,400,000, exclusive of interest, fees, costs and other charges paid-in-kind or otherwise capitalized.

      (ii)    <u>Interest</u>. The Postpetition Debt shall bear interest at a per annum rate equal to fifteen percent (15%). Upon the occurrence and during the continuation of an Event of Default, the Postpetition Debt shall bear incremental interest at a per annum rate equal to five percent (5%).

      (iii)    <u>Closing Fee</u>. The Debtors paid to Postpetition Lender a closing fee (the "<u>Closing Fee</u>") in an amount equal to 3.5% of the Interim DIP Amount upon entry of the Interim Order. The Debtors shall pay to Postpetition Lender a Closing Fee equal to 3.5% of the amount by which the DIP Commitment exceeds the Interim DIP Amount, fully earned, due and payable upon entry of this Order.

      (iv)    <u>Success Fee</u>. Debtors shall pay to Postpetition Lender, a success fee (the "<u>Success Fee</u>") in an amount equal to 3.5% of the DIP Commitment, fully earned, due and payable immediately upon the sale of substantially all of the Postpetition Collateral to any purchaser other than Postpetition Lender (or its affiliates).

      (v)    <u>Maturity</u>. The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.

(vi)   Joint and Several Liability of Debtors.   The obligations of each Debtor under this Order shall be joint and several.

(d)   Superpriority Administrative Expense Status; Postpetition Liens. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code subject to the Carveout. In addition, Postpetition Agent is hereby granted the Postpetition Liens to secure the Postpetition Debt; *provided, however*, with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extend to such leases themselves under this Order, except as permitted in the applicable lease or pursuant to applicable law, but rather any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such leases. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to Permitted Priority Liens) without any further action by Debtors or Postpetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; (5) shall not be subject to Code § 510(c); (6) shall not be subject to any bailee's rights, right of distraint or levy, security interest or other interest that any bailee or warehousemen may have in the Aggregate Collateral located on such leased premises; and (7) subject to the Carveout. Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Agent such financing statements, mortgages, instruments and other documents as Postpetition Agent may request from time to time, and any such documents filed by Postpetition Agent shall be deemed filed as of the Filing Date. Further, Prepetition Senior Agent shall serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Agent without further action by any party. The Postpetition Debt and Postpetition Liens shall have priority over all the "Adequate Protection Replacement Liens", "Additional Liens", "Adequate Protection Claims" and "Adequate Protection Obligations" granted or

8

otherwise provided for under the Cash Collateral Orders but shall be subject to the Carveout. However, with respect to the Debtors' liquor licenses, Postpetition Liens on such liquor licenses and the proceeds realized upon the sale, assignment, termination or other disposition of such liquor licenses will be permitted hereunder to the maximum extent permitted by law.

(e)     Prohibition Against Additional Debt.    Without the prior written consent of Postpetition Agent and Prepetition Senior Agent, Debtors may not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Senior Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1).

4.     Adequate Protection of Interests of Prepetition Senior Agent and Prepetition Senior Lenders in the Prepetition Senior Collateral and the Prepetition Senior Liens; Adequate Protection of Interests of Prepetition Junior Agent and Prepetition Junior Lenders in the Prepetition Junior Collateral and the Prepetition Junior Liens.    For itself and on behalf of the Prepetition Senior Lenders, Prepetition Senior Agent has consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of its interests in the Prepetition Senior Collateral from and after the Filing Date).    For itself and on behalf of the Prepetition Junior Lenders, pursuant to the terms of the Prepetition Intercreditor Agreement, Prepetition Junior Agent is deemed to have consented to the terms of this Order and is entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of its interests in the Prepetition Junior Collateral from and after the Filing Date).

(a)     Priority of Prepetition Senior Liens/Allowance of Prepetition Senior Agent's and Prepetition Senior Lenders' Claims.    Subject to the terms of Paragraph 8 of this Order: (1) the Prepetition Senior Liens shall constitute Priority Liens, subject only to the Postpetition Liens and the Permitted Priority Liens; (2) the Prepetition Senior Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Senior Documents; (3) no offsets, defenses or counterclaims to the Prepetition Senior Debt exist, and no portion of the Prepetition Senior Debt is subject to avoidance,

9

recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition Senior Agent's and Prepetition Senior Lenders' claims with respect to the Prepetition Senior Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than approximately $83,700,000, exclusive of accrued and accruing amounts allowable under Code § 506(b).

(b)    Senior Replacement Liens.    Prepetition Senior Agent is hereby granted the Senior Replacement Liens, for the benefit of Prepetition Senior Agent and Prepetition Senior Lenders, as security for payment of the Prepetition Senior Debt. The Senior Replacement Liens: (1) are and shall be in addition to the Prepetition Senior Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Senior Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case, and (4) shall be senior to the Junior Replacement Liens pursuant to the Prepetition Intercreditor Agreement and this Order, (5) shall not, absent further order of this Court, include any Chapter 5 causes of action or proceeds thereof; and (6) shall be subject to the Carveout. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Prepetition Senior Agent such financing statements, mortgages, instruments and other documents as Prepetition Senior Agent may reasonably request from time to time in respect of the Senior Replacement Liens.

(c)    Junior Replacement Liens.    Prepetition Junior Agent is hereby granted the Junior Replacement Liens, for the benefit of Prepetition Junior Lenders, as security for payment of the Prepetition Junior Debt. The Junior Replacement Liens: (1) are and shall be in addition to the Prepetition Junior Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Prepetition Junior Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case, and (4) shall be junior to the Senior Replacement Liens and the Prepetition Senior Liens pursuant to the Prepetition Intercreditor

10

Agreement; (5) shall not, absent further order of this Court, include any Chapter 5 causes of action or proceeds thereof; and (6) shall be subject to the Carveout.

(d)    Allowed Senior Code § 507(b) Claim.  Subject to the Prepetition Intercreditor Agreement, if and to the extent the adequate protection of the interests of Prepetition Senior Agent and Prepetition Senior Lenders in the Prepetition Senior Collateral granted pursuant to this Order proves insufficient, Prepetition Senior Agent and Prepetition Senior Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Case that are incurred under any provision of the Code and (2) the claims of any other party in interest under Code § 507(b) (including, without limitation the Prepetition Junior Agent and Prepetition Junior Lenders).

(e)    Allowed Junior Code § 507(b) Claim.  Subject to the Prepetition Intercreditor Agreement, if and to the extent the adequate protection of the interests of Prepetition Junior Agent and Prepetition Junior Lenders in the Prepetition Junior Collateral granted pursuant to this Order proves insufficient, Prepetition Junior Agent and Prepetition Junior Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, junior in right of payment to any Code § 507(b) allowed claims payable to Prepetition Senior Agent and Prepetition Senior Lenders.

5.    Termination Date; Rights and Remedies.

(a)    Effect of Termination Date.  Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court and subject to Paragraph 5(b) below: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, (ii) Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Postpetition Debt in accordance with Paragraph 2(c) of this Order and (iii) Postpetition Agent shall be entitled to setoff any cash in Postpetition Agent's or Prepetition Senior Agent's

11

possession or control and apply such cash to the Postpetition Debt in accordance with Paragraph 2(c) of this Order.

(b)    <u>Rights and Remedies</u>.  On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election without further order of the Court:   (1) Postpetition Agent and Prepetition Senior Agent shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Senior Documents, the Postpetition Documents and applicable nonbankruptcy law; and (2) Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Postpetition Agent and Prepetition Senior Agent in the exercise of their rights and remedies under the Prepetition Senior Documents, the Postpetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Lenders; provided, that the Debtors shall not be obligated to incur any costs or expenses in connection with any of the foregoing that is not covered by the Carveout (as the same may be increased with the written consent of Postpetition Agent).  Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtors and/or the Committee may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; <u>provided</u>, <u>however</u>, that during such five (5) business day period, no Postpetition Lender shall have any obligation to advance Postpetition Debt to Debtors and <u>provided</u> <u>further</u> that during such five (5) business day period, the Debtors shall have authorization to use Cash Collateral in accordance with the Budget in respect of the payment of Budget expenses incurred or otherwise accrued prior to the Termination Date.

(c)    <u>Access to Collateral</u>.  Notwithstanding anything to the contrary in this Order, the Prepetition Senior Documents, or the Postpetition Documents, the rights of the Prepetition Senior Agent, the Prepetition Senior Lenders, Postpetition Agent or the Postpetition Lender to enter onto the Debtors' leased premises shall be limited to (i) any such rights agreed to in writing by the applicable landlord in favor of the respective Prepetition Senior Agent,

Prepetition Lender, Postpetition Agent and/or the Postpetition Senior Lender or their designees (including, without limitation, in the governing lease agreement itself or in any landlord waiver or similar agreement), (ii) any rights that the respective Prepetition Senior Agent, Prepetition Senior Lender. Postpetition Agent and/or the Postpetition Lender have under applicable non-bankruptcy law, if any, or (iii) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard.

6.      Carveout.

(a)      Carveout Terms.   The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the date of entry of the First Interim Order and ending on the Termination Date (plus the amount of any prepetition retainer held by such Carveout Professional (y) less any amount required to pay allowed fees and expenses incurred from the Filing Date to and including August 30, 2016, and (z) capped at an amount equal to 50% of the budgeted amount for such Carveout Professional) and (ii) the aggregate amount of allowed fees and expenses that actually accrued for such Carveout Professional during the period commencing on the date of entry of the First Interim Order and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Senior Agent, Prepetition Senior Lenders, Postpetition Agent or the Postpetition Lender) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral.  All fees required to be paid to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) and the Clerk of the Court shall be included in the Carveout without limitation by the Budget.  Further, Postpetition Agent shall have the right to reserve against the DIP Commitment an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals less any amounts already funded into the Professional Fee Reserve (as defined below).  Upon the Termination Date, and notwithstanding anything herein to the contrary, Postpetition Lender shall provide Postpetition

Debt to the Debtors in an amount equal to (a) the Carveout amount for each Carveout Professional determined in clause (1)(i) above (less the amount of any unused prepetition retainers held by such Carveout Professional); provided, that if clause (1)(ii) above is determined to be applicable, any excess funding shall be promptly returned to the Postpetition Agent and (b) an amount equal to the sum of $150,000, minus the amounts of any pre-Filing retainers that are not otherwise required to be used to fund the Carveout under clause (1)(i) above, which Postpetition Debt shall be used by the Debtors for the sole purpose of funding the Carveout Professionals after the Termination Date.   Except as set forth in the preceding sentence, Postpetition Lender shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the Termination Date.

(b)    Carveout Usage.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; provided that the Carveout Professionals shall be entitled to use the post-Termination Date Carveout described above to pay for fees and expenses incurred in preparing, filing and prosecuting a motion to convert these Cases if the Postpetition Lender is refusing to provide any funding for these Cases; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Lenders' consent except as permitted under the Postpetition Documents; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lenders; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $35,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation,

14

preparation and entry of the Interim Order, this Order or any amendment hereto consented to by Postpetition Agent.

(c)     Carveout Procedure.    The Debtors shall periodically, upon the request of the Postpetition Agent, provide to the Postpetition Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Lenders to object to the allowance and payment of such fees, costs or expenses, or the right of Lenders to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional and are approved on an interim basis but later denied on a final basis.  For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

(d)     Following entry of the First Interim Order and on each Monday thereafter (or as soon thereafter as possible), the Debtors shall be authorized to transfer funds to the Greenberg Traurig LLP Client Trust Account (the "Expense Reserve Account") in the amounts set forth in the Budget for fees and expenses of the Carveout Professionals. Such funds shall be held in the Expense Reserve Account for the benefit of the Carveout Professionals, respectively, to be applied to the fees and expenses of such professionals approved for payment pursuant to one or more orders of this Court (the "Segregated Funds").  Fees and expenses payable to such professionals shall be paid first out of the Expense Reserve Account, and all amounts deposited in the Expense Reserve Account shall reduce, on a dollar for dollar basis, the obligation to fund the Carveout on the Termination Date, and provided further that there shall be no requirement that any amounts in respect of any investment banking fee or success fees that may be earned by any such professional be deposited into or have a claim against the Expense Reserve Account. Once funded, the amounts in the Expense Reserve Account shall be solely for the purpose of paying the fees and expenses of the Carveout Professionals until such fees and

expenses are paid in the amounts finally allowed by the Court. Without in any way limiting the Debtors' ability to use the Segregated Funds to pay fees payable to the Office of the United States Trustee and the Clerk of the Court and the fees and expenses of the Carveout Professionals, the Segregated Funds in the Expense Reserve Account to the extent not used to pay fees and expenses of Carveout Professionals shall remain Postpetition Collateral.

(e)     Carveout Under Cash Collateral Orders.  The provisions of this Paragraph 6 shall govern the priority of the Carveout and the rights of the Carveout Professionals for the period from and after the date of the First Interim Order and shall supersede the carveout provisions of the Cash Collateral Orders. From the filing date and until the date immediately preceding the entry of the First Interim Order, the carveout provisions of the Cash Collateral Orders shall govern.

7.     No Surcharge.  In the exercise of their business judgment, Debtors agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Postpetition Agent and Prepetition Senior Agent; provided, that the Carveout Professionals shall be not be able to assert any surcharge of the Aggregate Collateral for any purpose. Further, Debtors represent that they believe the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral, on a cash basis, through the period for which the Budget runs, and therefore includes all items potentially chargeable under Code § 506(c). Therefore, the Debtors shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Postpetition Agent, Postpetition Lender, Prepetition Senior Agent, Prepetition Senior Lenders or the Aggregate Collateral.

8.     Reservation of Rights; Bar of Challenges and Claims.  The stipulations and representations contained in in the Interim Order and this Order, including, without limitation, in Paragraphs F, shall be binding on all Challenge Parties, unless and solely to the extent that (i) a Challenge Party timely pursues a motion for standing, an adversary proceeding or

16

other appropriate objection during the Investigation Period and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)    Challenge Procedure.  During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must file a motion for standing to pursue such Challenge, if necessary, commence an adversary proceeding and/or file any other necessary papers during the Investigation Period.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.

(b)    Bar of Challenges and Claims.  If there is no Challenge raised during the Investigation Period (or such later date as agreed in writing by Prepetition Senior Agent, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Senior Agent and Prepetition Senior Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Prepetition Senior Agent and Prepetition Senior Lenders (in their capacities as such) and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Senior Debt, the Prepetition Senior Liens, the Prepetition Senior Documents or otherwise.

(c)    From and after the date of the Second Interim Order, the provision of this Paragraph 8 shall govern the process and procedures for Challenges and the Investigation Period and shall supersede any provisions set forth in the Cash Collateral Orders or the Interim Order that are less restrictive to parties in interest.

9.    Right to Credit Bid.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), (a) Postpetition Agent and Postpetition Lender shall have the right to

use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral and Postpetition Agent (acting at the direction of Postpetition Lender) may accept non-cash consideration in satisfaction of all or any portion of the Postpetition Debt as determined by Postpetition Agent in its discretion, and (b) Prepetition Senior Agent, acting at the direction of the "Required Lenders" under the Prepetition Senior Credit Agreement shall have the right to use the Prepetition Senior Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, subject to the Investigation Period, and shall otherwise have the right to accept non-cash consideration and determine the amount of Prepetition Senior Debt deemed satisfied in connection with the receipt of such non-cash consideration, so long as any such credit bid by Prepetition Senior Agent provides for a cash payment sufficient to repay the Postpetition Debt in full in cash (or other form of consideration acceptable to Postpetition Agent in its discretion).

10.     <u>Plan</u>.  Unless Postpetition Agent consents thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless the Postpetition Debt shall be paid in full in cash on the earlier of (a) the effective date thereof, and (b) the Termination Date.

11.     <u>Sale Covenants</u>.  An Event of Default will exist upon the failure of the Debtors to satisfy the following covenants in respect of the operation and sale of its businesses:

(a)     On or before the date provided in the Bid Procedures Order  (or such later date as Postpetition Agent may agree, in writing, in its discretion), Debtors shall have executed a purchase and sale agreement, in form and substance acceptable to Postpetition Agent as the opening bid with respect to the Sale.

(b)     On or before the date provided in the Bid Procedures Order (or such later date as Postpetition Agent may agree, in writing, in its discretion), Debtors shall have commenced an auction (the "<u>Auction</u>") in accordance with the Bid Procedures Order;

(c)     On or before the date provided in the Bid Procedures Order (or such later date as Postpetition Agent may agree, in writing, in its discretion), this Court shall have entered an order, which shall be in form and substance acceptable to Postpetition Agent, approving the Sale (the "Sale Order).

12.     Application of Sale Proceeds.  All sales and other dispositions (including casualty and condemnation events) of Aggregate Collateral other than dispositions in the ordinary course of business shall be in exchange for 100% cash consideration, unless otherwise agreed to in writing by Postpetition Agent.  All net cash proceeds of any such sales of Postpetition Collateral (including net of the Carveout in the event of a sale of substantially all of the Debtors' assets) shall be remitted to Postpetition Agent for application in accordance with Paragraph 2(c) of this Order.

13.     Waiver of Right to Return/Consent to Setoff.  Debtors hereby waive their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

14.     Indemnification.  Debtors shall indemnify and hold harmless Postpetition Agent, Postpetition Lender, Prepetition Senior Agent and Prepetition Senior Lenders in accordance with the Postpetition Credit Agreement.

15.     No Marshaling.   None of Postpetition Agent, Postpetition Lender, Prepetition Senior Agent, Prepetition Senior Lenders or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

16.     Postpetition Charges.  All Postpetition Charges are hereby approved and shall be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges.

17.    <u>Force and Effect of Prepetition Documents</u>.  Except as modified herein and subject to the other provisions of the Interim Order, this Order and the Code, the Prepetition Senior Documents and Prepetition Junior Documents shall remain in full force and effect with respect to the Prepetition Senior Debt and Prepetition Junior Debt, subject to the terms of the Prepetition Intercreditor Agreement.  To the extent there exists any conflict among the terms of the Motion, the Interim Order, the Prepetition Senior Documents, the Prepetition Junior Documents, the Prepetition Intercreditor Agreement and this Order, this Order shall govern and control.

18.    <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Postpetition Agent and Prepetition Senior Agent to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Postpetition Agent and Prepetition Senior Agent to exercise their respective rights contemplated by Paragraph 5 above.

19.    <u>No Waiver</u>.  Except as expressly set forth herein, Postpetition Agent, Postpetition Lender, Prepetition Senior Agent and Prepetition Senior Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Senior Documents, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Postpetition Agent or Prepetition Senior Agent, as applicable, and directed to Debtors. No failure of Postpetition Agent or Prepetition Senior Agent to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Postpetition Agent or Prepetition Senior Agent thereafter to demand strict compliance and performance therewith, and no delay on the part of Lenders in the exercise of any right or remedy under this Order, the Prepetition Senior Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Prepetition Senior Agent of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation the right to later assert: (1) that any of its interests in the Aggregate Collateral lack

adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

20. "Responsible Person." By taking any actions pursuant to this Order, Postpetition Agent, Postpetition Lender and Prepetition Senior Agent shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

21. Release. Upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, Debtors shall execute and deliver to Postpetition Agent and Postpetition Lender a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents.

22. Amendments. Debtors and Postpetition Agent may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court. The Debtor and the Postpetition Agent shall provide notice to the Committee of any modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest. Any proposed modification or amendment that would materially and adversely affect the rights of any creditor or other party-in-interest shall be filed on the Court's docket and the Committee and other parties-in-interest shall have three (3) days from the date of filing of such material modification or amendment to object in writing to such amendment and, if no objections are received, such modification or amendment shall be deemed effective. If an objection is received then the modification or amendment shall be subject to further order of this Court.

23. Binding Effect. Except as provided in Paragraph 8 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other

court, such termination or subsequent order shall not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order (including, without limitation, Paragraphs 2(d) 3(e) and 7); and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

24.    Survival.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Agent and Postpetition Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

25.    Conflict.  In the event of any conflict between the terms of the Interim Order, the Cash Collateral Orders or this Order, the terms of this Order shall govern and control.

26.    Surety/Surety Assets.  Notwithstanding anything in the Interim Order, this Order or the Credit Agreement to the contrary, nothing in this Order, the Interim Order or the Credit Agreement shall in any way prime or negatively affect the rights of International Fidelity Insurance Company ("IFIC"), Allegheny Casualty Company and/or their successors and/or assigns (collectively, the "Surety"), as to (a) any funds they are holding and/or being held for them, whether in trust, as security or otherwise or any such funds being held by or for taxing

authorities in connection with any taxes bonded by the Surety, (b) any substitutions or replacements of said funds (including accretions to and interest earned on said funds), and (c) any letters of credit related to any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors (collectively (a) to (c), the "Surety Assets"). Nothing in this Order, the Interim Order or the Credit Agreement shall affect the rights of the Surety under any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors as to the Surety Assets. In addition, nothing herein shall prime the set off and/or recoupment rights of the Surety or any party to whose rights the Surety may become subrogated therein, and/or any subrogation rights of the Surety. If any of the Surety Assets being held by the Debtors are used by the Debtors as part of cash collateral, a concomitant replacement trust claim or replacement lien shall be granted to the Surety and/or the tax authority whose claim is bonded by the Surety equal to the amount of the use of those funds in the same priority and amount as existed as of the Filing Date. Should this replacement trust and/or lien be insufficient (after taking into account amounts escrowed for any Surety), then the Surety and/or the taxing authority shall receive a superpriority claim pursuant to for any deficiency, which superpriority administrative expense claim shall be pari passu with any such claim granted to the Postpetition Agent and the Postpetition Lender hereunder. In addition pursuant to the Interim Order and the *Order Authorizing Debtors to Maintain, Continue, and Renew their Surety Bond Program with International Fidelity Insurance Company* [Docket No. 225] (the "Surety Order"), the Debtors funded into a segregated account (the "IFIC Account") the amount of $200,000 for the benefit of IFIC which amount shall act as credit support for the bonds issued by IFIC. The funds in the IFIC Account shall be maintained in the IFIC Account until the assumption, satisfaction or expiration of all of the bonds issues by IFIC and shall be available to IFIC in the event any bond is drawn. IFIC agrees to maintain the surety bonds during these Cases subject to appropriate arrangements acceptable to IFIC and the Debtors and subject to the Surety Order.

27.     PACA/PASA Claims. Notwithstanding anything herein, this Order shall not impact the validity or priority of any claims asserted under the Perishable Agricultural Commodities Act of 1930 or the Packers and Stockyards Act of 1921, as amended (collectively, the "PACA/PASA Claims") pending allowance by this Court. In addition, after entry of the First Interim Order, the Debtors funded $225,000 into an escrow for the benefit of holders of asserted

and allowed PACA/PASA Claims.  The amounts funded into such escrow shall be used exclusively to pay allowed PACA/PASA Claims. Such amounts shall be maintained and administered pursuant to procedures to resolve the PACA/PASA Claims to be approved by this Court.  The Debtors shall provide counsel for the holders of PACA/PASA Claims with reasonable reporting and other information to allow for reconciliation of the PACA/PASA Claims and assessment by holders of asserted and allowed PACA/PASA Claims of the sufficiency of the amounts in escrow with those holders having the right to request an increase in the amounts in escrow.  The form and substance of the reporting will be agreed to between the Debtors and counsel for holders of the PACA/PASA Claims.  No Challenge is required to be asserted by any holder of a PACA/PASA claim in order to maintain the validity and priority of such PACA/PASA claim and related trust fund rights in accordance with applicable law.  As a condition precedent to any sale of substantially all of the Debtors' assets or other disposition of them that includes a credit bid, (a) sufficient funds must be escrowed to satisfy asserted PACA/PASA claims; or (b) the holders of asserted PACA/PASA claims must otherwise be adequately protected, as determined by the Court and in accordance with applicable law.

28.    Dallas, Harris and Tarrant Counties (collectively, the "Local Texas Tax Authorities").  Notwithstanding any provisions of this Order, the Interim Order or any other final orders pertaining to post-petition financing, use of cash collateral or the sale of the Debtors' assets, including any agreements validating any such orders, the liens currently held by the Local Texas Tax Authorities shall neither be primed by nor subordinated to any liens granted thereby. Furthermore, from the proceeds of the sale of any of the Debtors' assets located in the State of Texas, the amount of $20,000 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor. The liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a cap on the amounts the Local Texas Tax Authorities may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These

24

funds may be distributed upon agreement between the Local Texas Tax Authorities and the
Debtors, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities.

Honorable Kevin Gross
United States Bankruptcy Judge

Dated: Sept. 19, 2016