## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LAST CALL GUARANTOR, LLC, *et al.*,[1] | Case No. 16-11844 (KG) |
| Debtors. | (Jointly Administered) |

### ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) APPROVING THE FINAL ASSET PURCHASE AGREEMENT; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (IV) APPROVING THE DESIGNATION RIGHTS AND PROCEDURES RELATED THERETO; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**"), for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the sale of all or substantially all of the assets of the business of the Debtors outside the ordinary course of business (the "**Sale**") to Fun Eats and Drinks LLC, a Wyoming limited liability company (individually and not in its capacity as a lender or agent and together with its permitted successors, designees and assigns, the "**Purchaser**") free and clear of Liens, claims, encumbrances, and interests other than Permitted Liens and the

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  Last Call Guarantor, LLC, Last Call Holding Co. I, Inc. (3962), Last Call Holding Co. II, Inc. (8727), Last Call Operating Co I., Inc. (3541), Last Call Operating Co II., Inc. (8272), F&H  Restaurants IP, Inc. (0107), Champps Restaurants IP, Inc. (3776), KS Last Call Inc. (1480), and MD Last Call Inc. (9190).  The Debtors' business address is 19111 Dallas Pkwy, Unit 370, Dallas, TX 75287.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Final Purchase Agreement, as applicable.

Assumed Liabilities; (ii) approving the Final Purchase Agreement attached hereto as **Exhibit A** between the Debtors and the Purchaser; (iii) authorizing the assumption and assignment of the Assumed Contracts to the Purchaser; and (iv) granting related relief; and the Court having entered an order approving the bid procedures (the "**Bid Procedures**") and granting related relief on September 1, 2016 [Docket No. 183] (the "**Bid Procedures Order**"); an Auction having been conducted pursuant to the terms of the Bid Procedures Order on September 20, 2016; and the Debtors having identified the Successful Bidder and the Backup Bidder at the conclusion of the Auction; and the Court having conducted a hearing on the Motion on September 29, 2016 (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and adequate and sufficient notice of the Motion, the Sale Hearing, and the Sale and all transactions contemplated thereunder and in this Sale Order having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and jurisdiction existing for the Court to consider the Motion; and upon the statements in support of the Motion presented at the hearing before the Court; and after due deliberation thereon it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found that the Purchaser has submitted the highest and best bid for the Assets; and good and sufficient cause appearing therefor;

2

THE COURT MAKES THE FOLLOWING FINDINGS[3]:

A.    <u>Jurisdiction and Venue.</u>   This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    <u>Statutory Predicates.</u>   The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

C.    <u>Final Order.</u>   This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.    <u>Notice.</u>   Actual written notice of the contemplated Sale (including the proposed assumption and assignment of the Assumed Contracts to the Purchaser and any Cure Amounts related thereto) was provided to the following parties (the "**Notice Parties**"): (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Lender and the First Lien Agent; (iii) counsel to the Second Lien Agent, (iv) counsel to the Committee; (v) those parties requesting notice pursuant to Bankruptcy Rule 2002; (vi) the Office of the United States Attorney General for the District of Delaware; (vii) the Internal Revenue Service; (viii) the non-Debtor parties to the potential Assumed Contracts; (ix) all taxing authorities in the

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

states where the Debtors are located, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Debtors or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Acquired Assets, or to have any known interest in the relief requested; (x) all persons known or reasonably believed by the Debtors to have asserted any Lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Acquired Assets; (xi) all persons known or reasonably believed to have expressed an interest in acquiring the Acquired Assets within the last four (4) months; (xii) Attorneys General in the states where the Debtors are located; (xiii) any applicable federal, state and local environmental agencies; and (xiv) all parties to any litigation involving the Debtors.

E.      Notice of the Motion and the time for filing objections to the Motion was reasonably calculated to provide all interested parties with timely and proper notice of the Sale.

F.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Final Purchase Agreement, Sale Hearing, Sale and transactions contemplated thereby, has been provided in accordance with the Bid Procedures Order, Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008.   The Debtors have complied with all obligations to provide notice of the Auction and Sale Hearing as required by the Bid Procedures Order.   The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Final Purchase Agreement, Sale, assumption of the Assumed Contracts is or shall be required.   The disclosures made by the Debtors concerning the Motion, the Final Purchase Agreement, Sale, assumption and assignment were good, complete, and adequate.

G.    The Debtors have provided notice of the potential assumption and assignment of the Assumed Contracts to the applicable non-Debtor counterparties.  Such notice also identified all defaults and actual pecuniary loss to the non-Debtor counterparties resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the non-Debtor counterparties can assert under the Assumed Contracts whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assumed Contracts (the foregoing amounts, collectively referred to as the "**Cure Amounts**").  The service and provision of the notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or the proposed Cure Amount for the respective Assumed Contract.   Non-Debtor counterparties to the Assumed Contracts have had an adequate  opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser, for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection has expired and to the extent any such party timely filed an objection or made such objection on the record at the Sale Hearing, all such objections have been resolved, withdrawn, overruled, or continued to a  later hearing as set forth in this Sale Order or on the record at the Sale Hearing.  To the extent that any such party did not timely file an objection,

such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the corresponding proposed Cure Amount, if any.

H.      Corporate Authority.  (i) The Debtors have the corporate power and authority to execute the Final Purchase Agreement, the Related Documents and all other documents contemplated thereby and the Sale of the Acquired Assets has been duly and validly authorized, (ii) the Debtors have all of the corporate power and authority necessary to consummate the transactions contemplated by the Final Purchase Agreement and the Related Documents, (iii) the Debtors have taken all corporate action necessary to authorize and approve the Final Purchase Agreement, the Related Documents and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Final Purchase Agreement or the Related Documents, are required for the Debtors to consummate such transactions.

I.      The Final Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Final Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

J.      The Debtors are the lawful owners of the Acquired Assets.    Subject to Bankruptcy Code sections 363(f) and 365(a) and pursuant to the terms of the Final Purchase Agreement and the Related Documents, the transfer of each of the Acquired Assets to the Purchaser in accordance with the Final Purchase Agreement will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will

6

vest the Purchaser with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Liens, claims, encumbrances, and interests, except for the Assumed Liabilities and Permitted Liens in accordance with the Final Purchase Agreement or as otherwise set forth in this Sale Order.

K.      The Debtors currently hold or have been issued Liquor Licenses that remain in effect authorizing the respective licensees to conduct retail sales of alcohol beverages including at each of the restaurant properties included in the Acquired Assets or Designation Rights Assets.  The Disclosure Schedules to the Final Asset Purchase Agreement identifies to the Knowledge of the Debtors (i) each such Liquor License and (ii) the property location that is the licensed premises associated with each such Liquor License.  The sale of alcohol beverages is an important component of the Debtors' business.  Subject to the terms and conditions of the Final Purchase Agreement, the Management Agreement and the Transition Services Agreement, the Court finds that it is in the best interests of the estates and all other parties in interest for said sales to continue uninterrupted during the transition of ownership from the Debtors to the Purchaser following the Court-ordered transfer of the Acquired Assets (including, without limitation, any Designation Rights Asset that is deemed an Acquired Asset pursuant to Section 2.7 of the Final Purchase Agreement), subject to reasonable and good faith efforts to timely transfer existing Liquor Licenses or apply for new liquor licenses equivalent to the Liquor Licenses that are not subject to transfer.

L.      Sale in Best Interests of the Debtors' Estates.  Good and sufficient reasons for approval of the Sale, the Final Purchase Agreement, the Related Documents and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and

other parties in interest. The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Bankruptcy Code section 363(b), outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Successful Bidder, is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize creditor recoveries.

M.    Time is of the essence in consummating the Sale. Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

N.    Except as otherwise set forth herein, the consummation of the Sale and the assumption and assignment of the Assumed Contracts are legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

O.    Good Faith of Purchaser and Debtors. The Final Purchase Agreement and the Related Documents were negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions and are substantively and procedurally fair to all parties. The Purchaser is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31). Neither any of the Debtors, nor the Purchaser has engaged in any conduct that would cause or permit the Final Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the

ATL 21474967v3

Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. The Purchaser is purchasing the Acquired Assets, in accordance with the Final Purchase Agreement and Related Documents, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' Chapter 11 Cases. As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order and, among other things: (a) the Debtors and the Purchaser complied with the provisions in the Bid Procedures Order; (b) the Purchaser in no way induced or caused the chapter 11 filing by the Debtors; and (c) all payments to be made by the Purchaser in connection with the Sale have been disclosed.

P.    <u>Highest and Best Offer.</u>    The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order. The Auction established in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher and better offer to purchase the Acquired Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher and better offer for the Acquired Assets. The Final Purchase Agreement constitutes the highest and best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Final Purchase Agreement constitutes the highest and best offer for the Acquired Assets is a valid and sound

exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

Q.    Consideration.  The consideration provided by the Purchaser pursuant to the Final Purchase Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession or the District of Columbia.  The Bid Procedures Order, pursuant to Paragraph 5 of the Bid Procedures, authorized the Prepetition Senior Agent, acting at the direction of the Required Lenders, to accept non-cash consideration in satisfaction of First Lien Obligations as additional Purchase Price.  Pursuant to Section 2.5(e) and (f) of the Final Purchase Agreement, and in accordance with the Bid Procedures, at the Auction, the Purchaser offered, and Prepetition Senior Agent accepted, non-cash consideration in the form of the Applicable Promissory Note and Applicable Preferred Units, in satisfaction of First Lien Obligations as set forth in the Final Purchase Agreement.  Further, pursuant to Paragraph 10(vi) of the Bid Procedures, all non-cash consideration acceptable to Prepetition Senior Agent in satisfaction of any portion of First Lien Obligations is deemed to have a value in the amount of First Lien Obligation proposed to be so satisfied.  Approval of the Motion, the Final Purchase Agreement, the Related Documents and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

R.    Title.  The transfer of the Acquired Assets to the Purchaser will be a legal, valid, and effective transfer of the Acquired Assets and will vest the Purchaser with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all liens, claims, encumbrances,

10

and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances and interests of any governmental, tax and regulatory authorities), other than (i) liens specifically assumed by Purchaser under the Final Purchase Agreement, (ii) Liquor Licenses and Permits that are subject to review and approval by any governmental entity, (iii) any alcohol beverage inventory that can be transferred only upon authorization of the pertinent governmental organization or issuance of the pertinent approval of the transfer of the Liquor License, and (iv) any Permitted Liens.

S.  No Successor.  The transactions contemplated under the Final Purchase Agreement and the Related Documents do not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between the Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and the Purchaser; the Purchaser is not a mere continuation of the Debtors or their estates; and the Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including but not limited to under any federal, state or local statute or common law.  Except for the Assumed Liabilities or as otherwise set forth in this Order, the (i) transfer of the Acquired Assets to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assumed Contracts, do not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

11

T.      Free and Clear.  The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Liens, claims, encumbrances, and interests in the Acquired Assets, other than the Assumed Liabilities and Permitted Liens and as otherwise set forth in this Order.

U.      The Purchaser would not have entered into the Final Purchase Agreement and the Related Documents and would not consummate the transactions contemplated thereby if the Sale to the Purchaser and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all Liens, claims, encumbrances, and interests other than the Assumed Liabilities and Permitted Liens.  The Debtors may sell the Acquired Assets free and clear of any Liens, claims, encumbrances, and interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with a Lien, claim, encumbrance, interest or other interest in the Acquired Assets to be transferred on the Closing Date:  (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of a Lien, claim, encumbrance, or interest who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to Bankruptcy Code section 363(f)(2).  In the case of the Liens in favor of the Prepetition Senior Agent and Prepetition Senior Lien Agent, the Liens in the Acquired Assets are being extinguished by operation of Bankruptcy Code section 363(f)(2) and not by the consensual release of Liens by Prepetition Senior Agent.

V.      Cure/Adequate Assurance.  The assumption and assignment of the Assumed

12

Contracts pursuant to the terms of this Sale Order is integral to the Final Purchase Agreement, is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment.   Payment of the Cure Amounts shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  Based upon the evidence presented at the Sale Hearing, the Purchaser's financial wherewithal to consummate the transactions contemplated by the Final Purchase Agreement demonstrates the Purchaser's ability to  perform the obligations under the Assumed Contracts after the Closing Date and establish adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

W.      Notwithstanding anything to the contrary contained in this Sale Order, any objections field by the counterparties to the leases and contracts listed on **Exhibit D** (the "Objecting Counterparties") are preserved in all respects pending Purchaser's determination of whether it seeks to have a Designation Rights Asset assumed and assigned to it in accordance with the Final Purchase Agreement.  To the extent that any counterparty failed to timely object to the proposed Cure Amounts, such counterparty is deemed  to have consented to such Cure Amounts and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Final Purchase Agreement.  For the avoidance of doubt, none

13

of the factual findings contained herein with respect to the assumption and assignment of the contracts of the Objecting Counterparties shall be binding on the objecting counterparties.

X.      First Lien Agent, acting at the direction of the Required Lenders is authorized by the terms of the First Lien Credit Agreement, the Guaranty and Security Agreement (as defined in the First Lien Credit Agreement) and the Bid Procedures to consent to the Sale and this Order and to accept non-cash consideration in satisfaction of First Lien Obligations as set forth in the Final Purchase Agreement.

Y.      Personally Identifiable Information.  The Transaction may include the transfer of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A). No consumer privacy ombudsman need be appointed under sections 332 and 363(b)(1) of the Bankruptcy Code because the Purchaser has agreed to adhere to any applicable privacy policies.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      The Motion is GRANTED and the relief requested therein APPROVED, as set forth herein.

2.      Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, continued, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, hereby are denied and overruled on the merits with prejudice.

3.      The Final Purchase Agreement, and all other ancillary documents, including the Management Agreement, the Transition Services Agreement and the other Related

14

Documents, and all of the terms and conditions thereof, are hereby approved in all respects. Pursuant to Bankruptcy Code sections 363(b) and 363(f), the Debtors are hereby authorized to (a) execute the Final Purchase Agreement and each of the Related Documents, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Final Purchase Agreement and the Related Documents, provided that such additional documents do not materially change the terms of the Final Purchase Agreement or Related Documents in a manner adverse to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Final Purchase Agreement and the instruments to the Final Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Final Purchase Agreement, including the assumption and assignment to the Purchaser (in accordance with the Final Purchase Agreement) of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final Purchase Agreement and the Sale including the Related Documents.

4.      Except as set forth herein or as set forth on the record at the Sale Hearing with respect to the Objecting Counterparties, this Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, claims, encumbrances, or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Purchaser, and all successors and assigns of the Purchaser and any trustees, if any, subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.   This Sale Order and the Final Purchase Agreement and the Related

15

Documents shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

5.       Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the Debtors are authorized to transfer the Acquired Assets to the Purchaser in accordance with the Final Purchase Agreement and such transfer shall constitute a legal, valid, binding and effective transfer of the Acquired Assets and shall vest the Purchaser with title in and to the Acquired Assets and, other than the Assumed Liabilities and Permitted Liens or otherwise set forth in this Order, Purchaser shall take title to and possession of the Acquired Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities. Pursuant to the terms of the Final Purchase Agreement, the Debtors are authorized to deliver the Applicable Promissory Note and Applicable Preferred Units to the Prepetition Senior Agent, for the benefit of the Secured Parties under the First Lien Credit Agreement.

6.       On the Closing Date, all persons and entities that are in possession of some or all of the Acquired Assets are directed to surrender possession of such Acquired Assets to the Purchaser in accordance with the Final Purchase Agreement. Additionally, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, claims, encumbrances, or other interests in the Acquired Assets, if any, as such Liens, claims, encumbrances, and interests may have been recorded or may otherwise exist.

7.       If any person or entity which has filed statements or other documents or agreements evidencing Liens or encumbrances on, claims against, or interests in, all or any

16

portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, encumbrances, claims, or other interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

8.       On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to the Purchaser of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, claims, encumbrances, or other interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Liens or as otherwise set forth in this Order with respect to the Objecting Counterparties, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.   A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record except those assumed as Assumed Liabilities.

9.       Except for the Assumed Liabilities and except as set forth in this Order with respect to the Objecting Counterparties and the Final Purchase Agreement and Related Documents, the Purchaser shall not have any liability or other obligation of the Debtors

arising under or related to any of the Acquired Assets including, but not limited to, any liability for any Liens, claims, encumbrances or interests whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, PACA/PASA Claims, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with or in any way relating to the operation of the Debtors' business prior to the Closing Date.

10.     All PACA/PASA Claims are adequately protected by the escrowed funds in the revised amount of $275,000 in possession of the Debtors to be used solely to satisfy such PACA/PASA Claims when allowed and the Revised DIP Budget shall be deemed amended to reflect the $50,000 increase in the escrowed funds; and any residual amount in such escrow after satisfaction of all asserted PACA/PASA Claims is an Acquired Asset.

11.     No bulk sales law, bulk sales tax law or any similar law or any state or other jurisdiction applies in any way to the Sale and the other transactions contemplated by the Final Purchase Agreement or the Related Documents.

12.     Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Final Purchase Agreement, all persons and entities, including, but not limited to, all debt holders and their direct and indirect participants, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, claims, encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in

18

connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser in accordance with the Final Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Liens, claims, encumbrances or interests in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, claim, encumbrance or interest against the Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any business operated with the Acquired Assets.

13.    To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.

14.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Final Purchase Agreement, and this Sale Order.

15.     The Purchaser has given substantial consideration under the Final Purchase Agreement for the benefit of the Debtors, their estates, and creditors.   The amount and form of consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens, claims, encumbrances or interests pursuant  to this Sale Order which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens or encumbrances against or interests in, or claims against any  of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities and Permitted Liens. The consideration provided by the Purchaser for the  Acquired Assets  under the Final Purchase Agreement is fair and reasonable and may not be avoided under section  363(n) of the Bankruptcy Code.

16.     Notwithstanding the foregoing, nothing herein shall prevent (a) the Debtors from pursuing an action against the Purchaser relating to the Final Purchase Agreement, the Management Agreement, the Transition Services Agreement or the other Related Documents, or (b) any administrative agencies,  governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials  from properly exercising their police and regulatory powers.

17.     The Debtors are hereby authorized, in accordance with Bankruptcy Code sections 105(a) and 365, to (a) assume and assign to the Purchaser in accordance with the Final Purchase Agreement, effective upon the Closing Date, the Assumed Contracts free and

20

clear of all Liens, claims, encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities); *provided*, *however*, notwithstanding anything to the contrary in the Final Purchase Agreement or this Order, Purchaser shall be responsible for liabilities for any breach of such Assumed Contracts occurring after such assignment and obligations to pay ~~year-end~~ adjustment and reconciliation  amounts that become obligations after the date of this Order (irrespective of whether such obligations accrued before, on, or after assumption and assignment of the Assumed Contracts), including tax reconciliations, common area charges and insurance premiums, under the terms of the applicable unexpired lease of real property, subject to any defenses provided by such ease and unless otherwise agreed, and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts and the Assumed Liabilities to the Purchaser in accordance with the Final Purchase Agreement.  In addition, without relieving Purchaser of its obligations under the Final Purchase Agreement, nothing in this Order or the Final Purchase Agreement shall affect Debtors' obligations under section 365(d)(3) of the Bankruptcy Code (or the Purchaser's assumption thereof pursuant to the Management Agreement) prior to the assumption and assignment or rejection of any Designation Rights Assets.

18.    With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract or unexpired lease under Bankruptcy Code section 365; (b) the Debtors may assume each of the Assumed Contracts in accordance with Bankruptcy Code section 365; (c) the Debtors may assign each Assumed Contract in accordance with Bankruptcy Code sections 363 and 365, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to

21

terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect for the Contemplated Transactions only; (d) all other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of each Assumed Contract, in accordance with the Final Purchase Agreement have been satisfied; (e) the Assumed Contracts shall be transferred and assigned to, and following the Closing Date remain in full force and effect for the benefit of, the Purchaser in accordance with the Final Purchase Agreement, notwithstanding any provision in any such Assumed Contract (including those of the type described in Bankruptcy Code sections 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer) and, pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser in accordance with the Final Purchase Agreement; and (f) upon the Closing Date, in accordance with Bankruptcy Code sections 363 and 365, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

19.     During the Designation Rights Period, Debtors may not reject any Contract unless such Contract is expressly designated by Purchaser in writing as an Excluded Contract under Section 2.6 of the Final Purchase Agreement, Purchaser fails to pay amounts owed with respect to such Contract in accordance with subsection (b) of Section 2.7 of the Final Purchase Agreement (after having been afforded written notification and an opportunity to cure such failure in accordance with the Final Purchase Agreement) or unless otherwise agreed to in writing by Purchaser.

20.     Purchaser may, by written notice to Debtors within the Designation Rights Period, specify that (A) any Designation Rights Asset that is a Contract shall be held by the Debtors and not rejected pursuant to Section 365 of the Bankruptcy Code for the duration of the Designation Rights Period, and (B) any Designation Rights Asset that is not a Contract shall be held by Debtors in abeyance during the Designation Rights Period pending designation for assignment or exclusion by Purchaser in accordance with Section 2.7 of the Final Purchase Agreement.  All consideration received by Debtors in respect of, and other benefits deriving from, such Designation Rights Asset (including Designation Rights Assets sold or assigned to third parties) shall be promptly delivered to Purchaser.

21.     As to each Designation Rights Asset, as soon as practical after receiving further written notice(s) (each, a "Designation Notice") from Purchaser during the Designation Rights Period requesting assumption, assignment and sale of any Designation Rights Asset to Purchaser or a third party, Debtors shall, subject to Purchaser or such third party demonstrating adequate assurance of future performance thereunder and paying all Cure Amounts to the extent required by Section 365 of the Bankruptcy Code, take all actions required by this Sale Order or any prior order, or otherwise that are reasonably necessary to seek to assume, assign and sell to Purchaser or such third party the applicable Designation Rights Asset pursuant to Section 363 of the Bankruptcy Code and, if such Designation Rights Asset is a Contract, Section 365 of the Bankruptcy Code.

22.     In the case of any Designation Rights Asset that is a Contract, that the Debtors seek to assume and assign from and after the Closing Date pursuant to Section 2.7 of the Final Purchase Agreement, within three (3) business days following receipt of a Designation Notice from Purchaser requesting assumption, assignment or sale of any such Contract to Purchaser or

23

a third party, the Debtors shall file with the Court a written notice of the Debtors' assumption and assignment of such Contract in accordance with this Order and Section 2.7 of the Final Purchase Agreement (such notice, in the form attached as **Exhibit E** to this Order, an "Assumption Notice"), which Assumption Notice shall include a proposed order authorizing the assumption and assignment of the Contract (such proposed order, in the form attached as ~~**Exhibit D**~~ Annex 1 to the Assumption Notice, the "**Assumption Order**") if the proposed assignee is an entity other than the Purchaser, a description of the adequate assurance to be provided, including all requisite financial documentation and information regarding the proposed use of the property.  The Debtors shall thereafter seek to assume and assign such Contract in accordance with and pursuant to the Assumption Notice and this Order, on fourteen (14) days notice, with the opportunity to objection to such assumption and assignment on all grounds. Should an objection be filed that cannot be resolved, the Debtors shall schedule a hearing with the Bankruptcy Court on fourteen (14) days notice.

23.     Following the end of the Designation Rights Period or, if earlier, the rejection date of a Designation Rights Asset, a Designation Rights Asset shall be deemed to be an Excluded Asset for all purposes under the Final Purchase Agreement.

24.     On the date any Designation Rights Asset is assumed, assigned and sold to Purchaser or its designee pursuant to Section 2.7 of the Final Purchase Agreement, such Designation Rights Asset shall be deemed an Acquired Asset for all purposes under this Agreement and no further consideration (except for the applicable Cure Amount with respect to Designation Rights Assets that are Contracts) shall be required to be paid for any Designation Rights Asset that is assumed, assigned and sold to Purchaser or its designee.

25.     All defaults or other obligations of the Debtors under the Assumed Contracts

24

arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts.  Should there be a cure dispute, undisputed Cure Amounts shall be paid on the effective date of assumption and assignment of the Assumed Contract, and the disputed portion shall be reserved until such time as the cure dispute is resolved.  To the extent that any counterparty to an Assumed Contract did not object to its Cure Amount by the objection deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Final Purchase Agreement.

26.    Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Purchaser and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the respective Cure Amounts reflect the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults under the Assumed Contracts, if any, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the Assumed Contracts in accordance with the Final Purchase Agreement, other than as otherwise set forth in this Order with respect to the Objecting Counterparties.

27.    Upon the Debtors' assignment of the Assumed Contracts to the Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts pursuant to Paragraph 23 hereof, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a

25

default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract.  Each non-Debtor counterparty to an Assumed Contract, unless otherwise ordered by the Court, hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, or against the Purchaser, any counterclaim, defense, setoff, recoupment or any other Claim  asserted or able to be asserted  against the Debtors; provided that any counterparty to a lease listed on **Exhibit D** hereto reserves its rights to object to this provision in the event that its lease is to be assumed and assigned to the Purchaser; and (ii) imposing or charging against the Purchaser any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to the Purchaser of any Assumed Contract in accordance with the Final Purchase Agreement.   The validity of such assumption and assignment of each Assumed Contract shall not be affected by any dispute between the Debtors and any non-Debtor counterparty to an Assumed Contract relating to such contract's respective Cure Amounts.

28.    Except as provided in the Final Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Liens, claims, encumbrances, and interests are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.  Further, pursuant to section 363(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with

ATL 21474967v3

respect to the Assumed Contracts occurring after such assignment and sale to the Purchaser; provided that any counterparty to a lease listed on **Exhibit D** hereto reserves its rights to object to this provision in the event that its lease is to be assumed and assigned to the Purchaser.

29.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

30.     On the Closing Date, all of the Acquired Actions shall be assigned, sold and transferred to Purchaser, free and clear of all Liens, claims, encumbrances, and interests and pursuant to Section 6.16 of the Final Purchase Agreement, Purchaser covenants and agrees that it shall not bring suit or otherwise assert any claim relating to the Acquired Actions against any of Debtors' vendors, landlords, directors, restructuring managers, officers or employees, before any court, arbitrator, mediator or administrative agency anywhere in the world.  Purchaser further covenants and agrees that it shall not assign the Acquired Actions or claims against Debtors' vendors, landlords, directors, restructuring managers, officers or employees to any third party.  Purchaser further covenants and agrees that it shall not bring suit or otherwise assert any claim relating to any other causes of actions so acquired in the Acquired Assets against any director, restructuring manager or officer of the Sellers.

31.     The transactions contemplated by the Final Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the

27

assumption and assignment of the Assumed Contracts) with the Purchaser unless such authorization is duly stayed pending such appeal.

32.    With the exception of alcohol beverage inventories that are received, possessed, sold and served pursuant to the Liquor Licenses, all persons and entities that are in possession of some or all of the Acquired Assets as of the Closing are hereby ordered to surrender possession of such Acquired Asset to the Purchaser as of the Closing.  Possession of each and any such alcohol beverage inventory shall be surrendered to the Purchaser at the earlier of (i) immediately following Closing where allowed by applicable law; (ii) receipt by the Purchaser of authorization from the pertinent governing entity where required by applicable law, or (iii) receipt by the Purchaser of the approval of the entity governing the applicable Liquor Licenses.

33.    To the extent any Liquor License, other license or permit necessary for the operation of the Debtors' business is not an assumable and assignable executory contract, Purchaser shall make reasonable efforts to apply for and obtain such Liquor License, license or permit promptly after the Closing Date, and the Debtors shall cooperate reasonably with Purchaser in those efforts at Purchaser's expense in accordance with the terms of the Final Purchase Agreement and the Management Agreement.  Each existing Liquor License, other license and/or permit applicable to the Debtors' business, including but not limited to each of the Liquor Licenses identified the Disclosure Schedules to the Final Purchase Agreement shall remain in place for Purchaser's benefit until the earlier of (i) an equivalent new Liquor License, new license or new permit is obtained, or (ii) the approval of the entity governing such Liquor License is secured, or the existing license or existing permit is transferred in accordance with applicable administrative procedures.

28

34.    Specifically, with regard to the sale of alcoholic beverages and food at any of the restaurant business properties encompassed by Acquired Assets (including any Designation Rights Asset that is deemed an Acquired Asset), and subject to the Management Agreement, the Court hereby orders that the Debtors and all other parties in interest shall cooperate with and support the Purchaser, at Purchaser's expense, in executing such applications and furnishing such documents as necessary for the Purchaser to obtain, in its name, any such temporary new alcohol beverage license, approval of any entity governing such Liquor License, transferred Liquor License, and/or other licenses and permits necessary to continue operation of the Debtors' business without interruption.  Moreover, except for good cause based on violations of law unrelated to the transfer of ownership of the business occurring pursuant to the Final Purchase Agreement and this Sale Order, the state or municipal government alcohol regulatory agencies having jurisdiction over the Liquor Licenses, and all other law enforcement and regulatory agencies shall not interrupt the Debtors' business at any of the properties listed on the Disclosure Schedules to the Final Purchase Agreement, including the sale of alcohol beverages and food by the Purchaser either on its own behalf, or on behalf of one or more of the Debtors pursuant to the Management Agreement, without first obtaining relief from this Court. The Debtors and Purchaser may continue to operate at each of the restaurant business properties identified on the Disclosure Schedules to the Final Purchase Agreement under existing Liquor Licenses, state food service licenses, local occupational licenses, and any other licenses or permits needed to operate at any of those restaurant business properties, with no interruption of the business conducted at any such premises, until the approval of the entities governing the Liquor Licenses have been secured and/or other licenses and permits have been transferred to

29

the Purchaser, or new alcohol beverage licenses and other licenses and permits have been issued to the Purchaser.

35.    The Purchaser is a good faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

36.    The failure to include any particular provisions of the Final Purchase Agreement or the Related Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Final Purchase Agreement and the Related Documents be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the Final Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.   Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.   To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

37.    The Final Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

38.    Fun Eats and Drinks, LLC, in its capacity as Postpetition Lender, is hereby authorized and obligated to fund the amounts set forth in the revised budget attached hereto as **Exhibit B** (the "**Revised Budget**") on the terms and conditions set forth in the Final Order Authorizing Debtors To: (A) Continue to Use Cash Collateral; (B) Incur Postpetition Debt; and

ATL 21474967v3

(C) Grant Adequate Protection and Provide Security and Other Relief to Fun Eats and Drinks LLC, as Lender [Docket No. 282] (the "**DIP Order**") through the Termination Date (as amended by this Order); provided, that (a) the maximum amount of Postpetition Debt and the DIP Commitment (each as defined in the DIP Order) shall, subject to the other terms and provision of the DIP Order and the Postpetition Documents, be deemed increased to the amount necessary to accommodate the borrowing under the Revised Budget, (b) the Postpetition Documents and the DIP Order (including the outside date definition of the Terminate Date) shall otherwise be deemed amended to accommodate the amount of borrowing under the Revised Budget, and otherwise subject to the other terms of the DIP Order and Postpetition Documents and (c) no additional Closing Fee shall be payable fee on account of the increased amounts. After the date of entry of this Sale Order, the Revised Budget shall be the Budget for all purposes under the DIP Order and may be amended or modified as provided therein. The defined term "Termination Date" as defined in the DIP Order is amended by replacing subclause (f) with "the End Date" as defined in the Final Purchase Agreement, or such earlier termination of the Final Purchase Agreement in accordance with its terms. If the Closing occurs, the Postpetition Lender shall fund the amounts in accordance with the Revised Budget and the DIP Order through the End Date, and the "Termination Date" as defined in the DIP Order will be deemed extended through the End Date.

39.     Within two (2) business days of the occurrence of the Closing, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit C** (the "*Notice of Sale Closing and Effective Date of Amendment of Case Caption*") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

ATL 21474967v3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LAST CALL GUARANTOR, LLC, *et al.*,[1] | Case No. 16-11844 (KG) |
| Debtors. | (Jointly Administered) |

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Last Call Guarantor, LLC, Last Call Holding Co. I, Inc. (3962), Last Call Holding Co. II, Inc. (8727), Last Call Operating Co I., Inc. (3541), Last Call Operating Co II., Inc. (8272), FHR IP, Inc. (0107), CR IP, Inc. (3776), KS Last Call Inc. (1480), and MD Last Call Inc. (9190). The Debtors' business address is 19111 Dallas Pkwy, Unit 370, Dallas, TX 75287.

40.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser in accordance with the Final Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement and enforce the provisions of this Sale Order and the Final Purchase Agreement; (b) protect the Purchaser against any Liens, claims, encumbrances or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever, arising or existing prior to the Closing Date, and (c) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

41.     Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order dismissing these Chapter 11 Cases or any order entered after any conversion of any

32

of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Final Purchase Agreement or this Sale Order unless otherwise agreed to by the Debtors and the Purchaser.

42.    DWV Maple Investments I, Limited ("**DWV**")  is approved as the Backup Bidder and the last bid submitted by DWV at the Auction is the Backup Bid.

43.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.   Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.   Any party objecting to this Sale Order must exercise due diligence in filing an  appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

44.    Notwithstanding anything to the contrary in this Sale Order or the Final Purchase Agreement, the Designation Rights Period shall not extend beyond the 210 days allowable under Section 365(d)(4) of the Bankruptcy Code without each applicable Landlord's consent.

45.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

46.    The objections of International Fidelity Insurance Company ("**IFIC**") to the sale and/or entry of this Order, including but not limited to the *Limited Objection to the Sale of All or Substantially All of Debtors Assets, Free and Clear of Liens, Claims, Encumbrances, and Other Interests to the Successful Bidder* [Docket No. 358] filed by IFIC on September 27, 2016 to the

33

extent not resolved and set forth on the record at the hearing on September 29, 2016, are hereby continued to October 19, 2016 and nothing in this Order or related documents shall affect IFIC's rights in connection with its objections.

47.     The objections to the relief requested in the Motion to the extent not explicitly continued by this Sale Order or on the record at the Sale Hearing with respect to the Objecting Counterparties are overruled.

48.     Notwithstanding anything to the contrary contained herein, to the extent that the contracts or leases with the counterparties listed on **Exhibit D** are Assumed Contracts, the Cure Amount for each such Assumed Contract(s) or other issues raised in the respective objections of the counterparties listed on **Exhibit D** shall be subject to determination either by (i) express agreement among the Debtors, the affected counterparty, and the Purchaser (or its designee) or (ii) further order of this Court.  For the avoidance of doubt, (x) none of the Exhibit D contracts or leases shall be included on the Closing Assumed Contracts List or otherwise be deemed Assumed Contracts as of the Closing Date and (y) if the Debtors deliver an Assumption Notice with respect to an Exhibit D contract or lease, the non-debtor party thereto shall be deemed to have objected to the assumption and assignment thereof, at least on the basis of its pending objection (as well as any other objection such party is entitled to raise pursuant to the Assignment Notice), unless such non-debtor party shall have withdrawn its pending objection in writing or on the record at the Sale Hearing.

49.     Notwithstanding any provisions of this Sale Order, or the DIP Order, including any agreements validating any such orders, the liens currently held by the Oakland County Treasurer shall neither be primed by nor subordinated to any liens granted thereby. Furthermore, from the proceeds of the sale of any of the Debtors' assets located in the State of

34

Michigan, the amount of $23,159.95 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of the Oakland County Treasurer prior to the distribution of any proceeds to any creditors. The liens of the Oakland County Treasurer shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds shall be for adequate protection and shall constitute neither the allowance of the claims of the Oakland County Treasurer, nor a cap on the amounts the Oakland County Treasurer may be entitled to receive. Furthermore, the claims and liens of the Oakland County Treasurer shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed upon the agreement between the Oakland County Treasurer and the Debtors, or by subsequent order of the Court, duly noticed to the Oakland County Treasurer.

50.    From time to time, as and when requested by any party, each party, at no cost to the Debtors, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Final Purchase Agreement including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Acquired Assets.

Dated: September 29, 2016

_____
HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

35