**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LAST CALL GUARANTOR, LLC, *et al.*,[1] | Case No. 16-11844 (KG) |
| Debtors. | (Jointly Administered) |

**Obj. Deadline: August 15, 2017 at 4:00 p.m. (ET)**
**Hearing Date: August 29, 2017 at 10:00 a.m. (ET)**

**MOTION OF DEBTORS FOR ENTRY AN ORDER PURSUANT TO
11 U.S.C. §§ 105(a), 305(a), 349, 363, 554, AND 1112(b) AND
FED. R. BANKR. P. 1017(a) AND 6007 (A) DISMISSING DEBTORS'
CHAPTER 11 CASES AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby move this Court (the "**Motion**") for entry of an order, substantially in the form attached

hereto as **Exhibit A**, pursuant to sections 105(a), 305(a), 349, 363, 554, and 1112(b) of title 11 of

the United States Code (the "**Bankruptcy Code**"), and Rules 1017(a) and 6007 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (a) dismissing the Debtors'

chapter 11 cases (the "**Chapter 11 Cases**") and (b) granting related relief, including, without

limitation, (i) authorizing, but not directing, the Debtors to abandon any remaining assets,

(ii) authorizing, but not directing, the Debtors to abandon, destroy or turnover to the Purchaser

(defined below), if agreed to by Purchaser, any and all of the books and records in the Debtors'

possession, including, but not limited to, (a) accounting documents (including, without

limitation, financial reports, income and other tax returns and other related documents), (b) bank

documents (including, without limitation, bank statements and copies of cancelled checks),

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax
identification number, if applicable, are:  Last Call Guarantor, LLC, Last Call Holding Co. I, Inc. (3962), Last
Call Holding Co. II, Inc. (8727), Last Call Operating Co I., Inc. (3541), Last Call Operating Co II., Inc. (8272),
FHR IP, Inc. (0107), CR IP, Inc. (3776), KS Last Call Inc. (1480), and MD Last Call Inc. (9190).  The Debtors'
business address is 19111 Dallas Pkwy, Unit 370, Dallas, TX 75287.

(c) corporate governance documents, (d) documents related to contracts, leases and other contractual agreements of the Debtors, (e) insurance documents, (f) human resources and other related employment documents, (g) documents related to these Chapter 11 Cases, and (h) any and all electronic documents maintained by the Debtors (collectively, the "**Books and Records**"), (iii) approving procedures for filing and approving final fee applications and providing for payment of approved fees, and (iv) directing the Debtors to be dissolved.   In support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction, Venue, and Statutory Predicates

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief sought herein are sections 105(a), 305(a), 349, 363, 554, and 1112(b) of the Bankruptcy Code and Bankruptcy Rules 1017(a) and 6007.

### Background

**A.      Status of the Case**

3.      On August 10, 2016 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

4.      On August 23, 2016, an official committee of unsecured creditors was appointed in these Chapter 11 Cases (the "**Creditors' Committee**") [D.I. 87].  No request has been made for the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code.

5.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.      Sale of Debtors' Assets**

6.      On September 29, 2016, this Court entered the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (II) Approving the Final Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (IV) Approving the Designation Rights and Procedures Related Thereto; and (V) Granting Related Relief* [D.I. 397] (the "**Sale Order**").  The Sale Order approved the sale of substantially all of the Debtors' assets to Fun Eats and Drinks, LLC ("**FEAD**", or its designee, the "**Purchaser**"), pursuant to that certain asset purchase agreement between and among the Debtors and the Purchaser (the "**Asset Purchase Agreement**"), including, without limitation, causes of action arising under Chapter 5 of the Bankruptcy Code and causes of action against the Debtors' officers and directors.   The sale closed on October 5, 2016 (the "**Closing Date**") [D.I. 420].

7.      On the Closing Date, the Debtors and the Purchaser entered into a transition services agreement and master interim management agreement to facilitate the transfer of the Debtors' assets to the Purchaser.  By entering into these agreements, the Purchaser managed the Debtors' businesses while the Purchaser (a) determined which leases and contracts it wanted to assume and (b) complied with applicable law to transfer the Debtors' liquor licenses to the Purchaser.   This process is now complete, and the Debtors do not believe that they own any material assets.[2]

8.      Pursuant to the Sale Order and the Asset Purchase Agreement, the Purchaser agreed to escrow amounts for the payment of the PACA/PASA claims and agreed to pay certain

---

[2]   The Debtors have five (5) liquor licenses in safe keeping that will be abandoned if this Motion is granted.  The Debtors do not believe that these licenses have significant value.  In addition, the Purchaser had the right to direct the transfer of such licenses to a new owner and to date, has not been able to locate any interested party.

503(b)(9) claims to the extent allowed by the Court.  The Debtors believe that all allowed

503(b)(9) claims and PACA/PASA claims have been paid in full.

9.      Further, pursuant to the Sale Order, the Purchaser was required to fund those

amounts set forth in the Revised Budget (as defined in the Sale Order), including, without

limitation, certain amounts to pay winddown expenses incurred in these Chapter 11 Cases. *See*

Sale Order at ¶ 38 and Exhibit B.  As a result of the Purchaser's ongoing funding obligations and

the transition of the Debtors' business to the Purchaser over several months post-closing, the

Debtors continue to have control of certain bank accounts that have not been transitioned to the

Purchaser and continue to receive cash into such accounts (collectively, the "**Winddown Cash**").

10.     The Debtors believe that all known administrative expenses, other than

professional fees, have either been paid in full or will be paid in full prior to the hearing on this

Motion through financing or other funding from the Purchaser, including from the Winddown

Cash.

11.     The Purchaser has funded into escrow agreed upon amounts to pay allowed

professional fees in these Chapter 11 Cases (the "**Professional Fee Escrow**").[3]    This

Professional Fee Escrow is held at Greenberg Traurig, LLP.  While the amounts deposited into

the Professional Fee Escrow will not be sufficient to pay all of the fees and expenses incurred by

the Debtors' counsel and the Committee's professionals (collectively, the "**Professionals**"), if

allowed, the Purchaser has met its obligations under the Sale Order for purposes of funding such

amounts.

---

[3]    Because the post-closing fees and expenses of the Debtors' counsel and Committee's counsel have been less
than the budgeted amounts set forth in the Sale Order, by agreement, the Purchaser has not been required to
comply with all of its monthly obligation under the Revised Budget, Sale Order and Asset Purchase Agreement
to fund certain amounts into escrow for professional fees and expenses, including with respect to the Debtors'
professional fees, Committee's professional fees and the fees paid to the Debtor's sole director and restructuring
manager.  This arrangement was modified by agreement of such parties.

### C.    Debtors' Books and Records

12.    On the Petition Date, the Debtors maintained books, records information, ledgers, files, invoices, documents, work papers, correspondence, lists (including customer lists, supplier lists and mailing lists), plans (whether written, electronic or in any other medium), drawings, designs, specifications, creative materials, advertising and promotional materials, marketing plans, studies, reports, data and similar materials related to the Debtors' business.

13.    Pursuant to the Asset Purchase Agreement, all Books and Records related to the Acquired Assets and Assumed Liabilities (each, as defined in the Asset Purchase Agreement) were sold to the Purchaser.

14.    The Debtors have maintained certain Books and Records during this winddown process.   The Debtors submit that continued maintenance of such Books and Records would be a significant burden, and the Debtors do not have ongoing funding for the related costs. Therefore, the Debtors request that they be allowed to abandon, destroy or turnover to the Purchaser, if agreed to by Purchaser, any Books and Records in the Debtors' possession.

**Relief Requested**

15.    By this Motion, the Debtors request entry of an order (a) dismissing the Chapter 11 Cases and (b) granting related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon any remaining assets, (ii) authorizing, but not directing, the Debtors to abandon, destroy or turnover to the Purchaser, if agreed to by Purchaser, any and all of the remaining Books and Records, (iii) approving procedures for filing and approving final fee applications and providing for payment of approved fees, and (iv) directing the Debtors to be dissolved on the terms provided for in the proposed order annexed hereto.

**Basis for Relief Requested**

A.      **The Court Must Dismiss these Cases if Elements for "Cause"**
        **Are Shown Under Bankruptcy Code Section 1112(b)(4)**

16.     Pursuant to section 1112(b)(1) of the Bankruptcy Code, absent unusual circumstances, a court shall dismiss a bankruptcy case "for cause."  Section 1112(b)(1) states, in relevant part:

> [O]n request of a party in interest, and after notice and a hearing, . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).   The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 changed the statutory language with respect to conversion and dismissal from permissive to mandatory.   *See* H.R. Rep. 109-31 (I), 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause).

17.     Section 1112 limits a court's discretion to refuse to dismiss a chapter 11 case upon a finding of "cause."   *See In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.").

18.     Determinations of whether "cause" exists are made on a case-by-case basis and the decision to dismiss a chapter 11 case rests in the sound discretion of a court.   *In re Young*, 76

B.R. 376, 378 (Bankr. D. Del. 1987) ("The determination of whether cause has been shown must be made on a case-by-case basis . . . ."). As discussed herein, the Court must dismiss these Chapter 11 Cases because cause exists and dismissal is in the best interests of the Debtors, their estates, and their creditors.

**B. Cause Exists to Dismiss the Chapter 11 Cases Because Debtors Ceased Their Business Operations, Have No Assets Available for Distribution, and Are Unable to Confirm a Chapter 11 Plan**

19. Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 grounds for dismissal. 11 U.S.C. § 1112(b)(4)(A)-(P). *See also In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987) ("[C]ause is not limited to the enumerated grounds of § 1112(b)."); *In re 3 Ram*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not.").

20. One such ground is where a party-in-interest shows that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). To demonstrate a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, a debtor must establish: (i) that there has been a diminution of value of the estate, and (ii) the debtor does not have a "reasonable likelihood of rehabilitation." *See, e.g.*, *In re Citi-Toledo Partner*s, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) ("Section 1112(b)(1) contemplates a 'two-fold' inquiry into whether there has been a continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation." (internal quotation marks and citation omitted)).

21. Under the two-fold inquiry, the Debtors must first demonstrate that there has been a diminution of value of their estates. *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606 (finding that accumulation of real estate taxes impaired the value of the estate). Second, the

Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation." *See, e.g., Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation").

22.    Here, the Debtors easily satisfy the two-fold inquiry.  <u>First</u>, the Debtors liquidated substantially all of their assets in connection with the sale to the Purchaser.  As noted above, the Debtors no longer conduct any business and substantially all assets were transitioned to the Purchaser.  All known administrative expense claims, PACA/PASA claims, and 503(b)(9) claims have been paid in full, with the exception of the Professionals' fees and expenses and with the exception of certain administrative expenses that the Debtors expect to be paid prior to the hearing on this Motion through financing or other funding provided by the Purchaser.  While the amounts deposited into the Professional Fee Escrow will not be sufficient to pay in full the Professionals' fees and expenses (assuming all such fees and expenses are allowed), the Professionals have agreed to accept the amounts deposited into the Professional Fee Escrow in satisfaction of any finally allowed fees and expenses.

23.    <u>Second</u>, there is simply no business to reorganize.  Pursuant to the Asset Purchase Agreement and the Sale Order, the Debtors transferred substantially all of their assets to the Purchaser and ceased operations.

24.    An additional ground is the "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4)(M).  The Debtors do not have any remaining assets with sufficient value to justify pursuing confirmation of a plan of liquidation. Moreover, the Debtors do not have sufficient monies to pay for the costs of confirming a plan.

25.     Ultimately, the Debtors have met their burden and these Chapter 11 Cases should be dismissed due to the substantial or continuing loss to, or diminution of, the Debtors' estates, the absence of a reasonable likelihood of rehabilitation, and the fact that a plan is not necessary or feasible under the circumstances.

**C.      Dismissal Is in the Best Interests of the Debtors' Creditors and Estates**

26.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must evaluate whether dismissal is in the best interests of the debtor's creditors and of the estate.  *See, e.g.*, *Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").  A variety of factors demonstrate that it is in the best interest of the Debtors' estates and their creditors to dismiss these Chapter 11 Cases.

27.     First, a dismissal of a chapter 11 bankruptcy case meets the best interests of creditors test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated.  *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Tr. (In re Camden Ordinance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that "reorganization to salvage" a business that had ceased doing business was "infeasible").  As explained above, the Debtors have nothing left to reorganize, because substantially all of the Debtors' assets were sold to the Purchaser.

28.     Second, the best interests of creditors test is also met where an interested party, other than the debtor, feels that dismissal is a proper disposition of the case.  *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. E.D. Pa. 1995) (factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and United States Trustee both favored dismissal).  Here, the Creditors' Committee is supportive of the Debtors' decision to dismiss these Chapter 11 Cases.

29.     <u>Finally</u>, dismissing these Chapter 11 Cases is warranted because the alternative—conversion to a chapter 7 case and the appointment of a trustee—would not serve the interests of the Debtors' estates or their creditors as there are no assets to administer.   Converting to chapter 7 will unnecessarily impose significant additional administrative costs upon the Debtors' estates.   Further, under the circumstances, the chapter 7 trustee would have insufficient assets with which to pay such administrative expenses or other claims.

30.     Thus, in balancing the equities here, it is clear that it is in the best interest of the Debtors' estates and their creditors to dismiss these Chapter 11 Cases.

**D.     Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) of the Bankruptcy Code**

31.     Alternatively, cause exists to dismiss the Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code, which provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
>> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a).

32.     Dismissal pursuant to section 305(a) is an extraordinary remedy, and dismissal is only appropriate where the court finds that both creditors and the debtor would be better served by dismissal.   *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009). Dismissal under this provision is also determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court.   *In re Sky Grp. Intern, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).

33.     For the reasons set forth above, cause likewise exists for dismissal under section 305(a) of the Bankruptcy Code.

**E.     Court Should Authorize Debtors to Abandon, Destroy or Turnover the Books and Records to Purchaser and Abandon Any Remaining Assets**

34.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, [a debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Additionally, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* at § 105(a). Bankruptcy Rule 6007 further provides that a debtor may abandon property of the estate by giving notice of the proposed abandonment to various parties, and allowing those parties to file an objection.

35.     The Debtors request that the Court authorize, but not direct, the Debtors to abandon, destroy, or turnover to the Purchaser, if agreed to by Purchaser, any remaining Books and Records.  Further, if Debtors seek to destroy any Books and Records then the Debtors propose to provide Purchaser a reasonable opportunity to make a copy of such Books and Records prior to the disposal.  As noted above, the Debtors sold substantially all of their assets through the Sale, including the Books and Records related to the Acquired Assets and Assumed Liabilities.  The Debtors no longer have an operating business.  Accordingly, the remaining Books and Records are of no value to the Debtors after dismissal of the Chapter 11 Cases and the proposed dissolution.

36.     Accordingly, the Debtors submit that the relief requested herein with respect to the Books and Records is necessary, prudent, and in the best interests of the Debtors' estates, and creditors.

37.     In addition, the Debtors do not believe that there are any other material assets to administer.  Therefore, the Debtors seek to abandon any other remaining assets.

**F.      U.S. Trustee Fees, Professional Fee Issues and Remaining Winddown Cash**

38.      The proposed order provides that all of the U.S. Trustee fees will be paid in full prior to the dismissal of these Chapter 11 Cases.

39.      Further, the Debtors request that the Court (i) schedule a hearing for final approval of any fees and expenses incurred by the Professionals (the "**Final Fee Hearing**"), and (ii) require the Professionals to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "**Final Fee Applications**") not later than twenty (21) days prior to the Final Fee Hearing with any objections to the Final Fee Applications be filed and served on counsel for the Debtors, counsel for the Committee and on the Professional whose fees are being objected prior to the Final Fee Hearing.

40.      To the extent that any of the monies held in the Professional Fee Escrow remain unused after dismissal of these Chapter 11 Cases and payment of the agreed upon amounts set forth in the Winddown Budget and the debtor-in-possession financing and cash collateral orders entered in these Cases, such unused amount shall be transferred from Greenberg Traurig, LLP to the Purchaser.

41.      Upon entry of an order approving this Motion, the Debtors shall deposit $75,000 into a segregated account held by Walker Nell Partners, Inc.[4], which amounts shall be used to pay for any costs relating, in any way, to implementation of the dismissal of these Chapter 11 Cases, including dissolution of the Debtors, destruction of any Books and Records and preparation of final tax returns.  To the extent there are any funds remaining in this segregated

---

[4]    Walker Nell Partners, Inc. is the consulting firm at which Wayne Walker, the Debtors' sole director and restructuring manager, is employed.  Walker Nell Partners, Inc. will be responsible for completing any remaining items necessary for the Debtors upon dismissal of the Chapter 11 cases, including, without limitation, dissolving the Debtors.

account on the date that is nine (9) months after dismissal of these Chapter 11 cases, such funds shall be remitted to the Purchaser.

42.     Upon filing the Certification (as defined below), the Debtors shall remit all Winddown Cash to the Purchaser net of any outstanding checks, wires or other pending debits.

**G.     Certification**

43.     The proposed order dismisses the Debtors' Chapter 11 Cases immediately upon the Debtors filing a certification of counsel (the "**Certification**") substantially in the form annexed to the proposed order as **Exhibit 1**.  The Certification will verify that (i) all quarterly fees of the U.S. Trustee fees have been paid in full, (ii) the Professionals have been paid the agreed upon amounts for their respective allowed fees and expenses from the Professional Fee Escrow and (iii) the Debtors have turned over net cash to the Purchaser pursuant to the terms of the order approving this Motion.

44.     The Debtors intend to serve the Certification on the general service list established in the Chapter 11 Cases, including the U.S. Trustee, but will not send the Certification to the entire matrix of creditors and parties-in-interest, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on the present Motion.

## Notice

45.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Purchaser; (c) counsel to the Creditors' Committee; and (d) the creditor matrix, including those parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully requests that this

Court approve the relief requested in this Motion and grant such other and further relief as is just

and proper.

Dated: July 25, 2017

**GREENBERG TRAURIG, LLP**

*/s/  Dennis A. Meloro*

Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
Email: melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Nancy A. Peterman (admitted *pro hac vice*)
Matthew Hinker (DE Bar No. 5348)
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile:  (212) 801-6400
Email:  mitchelln@gtlaw.com
         petermann@gtlaw.com
         hinkerm@gtlaw.com

*Counsel for the Debtors and*
*Debtors-in-Possession*